UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
JAMES LUCIEN,                        )
        Petitioner,                  )
                                     )
             v.                      )      C.A. No. 07-11338-MLW
                                     )
LUIS SPENCER,                        )
        Respondent                   )
```

MEMORANDUM AND ORDER

WOLF, D.J.                                        September 30, 2015

I.     INTRODUCTION ............................................... 2
II.    FACTS AND PROCEDURAL HISTORY ............................... 3
  A.   State Court Proceedings ................................... 3
  B.   Habeas Proceedings ...................................... 15
III.   LEGAL STANDARDS .......................................... 21
  A.   Review Under 28 U.S.C. §2254 ............................ 21
  B.   Ineffective Assistance of Counsel ....................... 27
  C.   Federal Review of State-Court Jury Instructions ......... 29
IV.    ANALYSIS ................................................. 30
  A.   Challenges to Jury Instructions ......................... 30
    1. Claim One: Limiting Instruction Concerning the Butler Plea
       ...................................................... 30
    2. Claim Two: Felony Murder Instruction.................... 60
  B.   Ineffective Assistance of Counsel Claims ................ 62
    1. Claim Three: Failure to Inform Lucien of the Prosecutor's
       Impeachment Decision.................................... 64
    2. Claim Four: Failure to Call Expert Witnesses........... 70
  C.   Evidentiary Hearing and Discovery ....................... 85
  D.   Stay and Abeyance ....................................... 85
V.     CERTIFICATE OF APPEALABILITY ............................. 85
VI.    ORDER .................................................... 93

I.    INTRODUCTION

On November 28, 1995, petitioner James Lucien was convicted of first degree murder, two counts of armed robbery, and one count of illegal possession of a firearm in Suffolk Superior Court (the "trial court").  On December 5, 1995, he was sentenced to life in prison.  The jury was presented with evidence that allowed it to find that Lucien robbed Ryan Edwards and his brother, Alfred Clarke, then shot and killed Mr. Edwards.

The Massachusetts Supreme Judicial Court (the "SJC") upheld Lucien's conviction on direct appeal and affirmed the trial court's denial of his motion for a new trial.  The trial court also denied Lucien's second motion for a new trial.  A Single Justice of the SJC denied his application for leave to appeal that denial.  Lucien then filed a petition for a writ of habeas corpus in this court pursuant to 28 U.S.C. §2254 (the "habeas petition"), raising five grounds for relief.  Lucien has since amended his initial claims.  He currently asserts four grounds for relief.

First, Lucien claims that he was denied due process of law because the trial court did not instruct the jury that it could not consider his co-defendant's guilty plea as evidence against Lucien (Claim One).

Second, Lucien claims that he was denied due process of law by the trial court's felony murder instruction (Claim Two).  He contends that the instruction allowed the jury to find him guilty

2

of felony murder even if it found that Mr. Edwards was killed by someone other than Lucien or his co-conspirator. Such a finding would not make Lucien liable for felony murder as defined by Massachusetts law.

Third, Lucien alleges that he was denied effective assistance of counsel because his attorney did not adequately advise him concerning the decision on whether to testify at trial (Claim Three). Lucien claims that he would have testified if his attorney had advised him of all of the relevant considerations.

Fourth, Lucien argues that he was denied effective assistance of counsel because his attorney did not call two retained expert witnesses to testify at trial (Claim Four). He maintains that his attorney's decision not to have these witnesses testify prejudiced his defense because the experts would have provided valuable testimony to show that he did not shoot Mr. Edwards.

For the reasons explained below, none of Lucien's claims is meritorious. The petition is, therefore, being denied. Lucien is being granted a Certificate of Appealability to appeal Claims One, Three, and Four.

II. FACTS AND PROCEDURAL HISTORY

A. State Court Proceedings

1. Trial and Conviction

On November 28, 1995, following a five-day jury trial in Suffolk Superior Court, Lucien was convicted of first degree

3

murder, two counts of armed robbery, and illegal possession of a firearm. He was sentenced to life imprisonment for the first degree murder conviction and given concurrent sentences on the other counts.

In its direct appellate review of Lucien's conviction, the SJC summarized the evidence presented at trial:

> On June 25, 1994, the defendant [Lucien] and Jamal Butler agreed to rob an unspecified drug dealer later that day. The defendant brought a friend with him to the designated meeting place. The three men went to the home of Butler's girl friend, where Butler paged the victim, Ryan Edwards, whom he knew, and knew to be a cocaine dealer. Edwards's brother, Alfred Clarke, answered the page and passed the telephone to Edwards. The defendant tried to arrange to buy some cocaine, but Edwards refused to deal because he did not know the defendant. Following a brief argument, the defendant hung up. Butler paged the victim a second time and spoke with Clarke, who knew him. Butler arranged for the defendant to buy one ounce of cocaine from Edwards for $850 at the McDonald's restaurant on Warren Street in the Roxbury section of Boston, where the parties agreed to meet within one-half hour.
>
> At the McDonald's parking lot, Butler entered Edwards's car and sat in the back seat. Edwards was in the driver's seat and Clarke sat in the front passenger seat. Edwards showed Butler the cocaine and Butler said that he was "going to get my man," meaning the defendant, who was to deliver the money. Butler returned to the defendant's car and told him to "go handle his business." The defendant went over to Edwards's car and sat in the rear seat. Edwards drove out of the parking lot onto Warren Street because he was concerned about being seen by security personnel. The defendant pulled out a gun and said, "Keep driving or I'll kill both of you." He ordered Clarke to turn over his cash, pager, and the bracelet he was wearing. He then ordered Clarke to get out of the car. Edwards pulled over and Clarke got out. As the car drove off, Clarke heard a gunshot and saw a

4

flash inside the car. He waved down a police cruiser and told the officers, "They shot my brother."

At some point the defendant got out of Edwards's car. Edwards eventually stopped his car in a parking area on Albert Street, approximately five blocks from the McDonald's restaurant, and "revv[ed]" the engine. An off-duty Boston police officer who was visiting a nearby home heard two gunshots and saw Edwards's car pull into the parking area. He went outside to investigate. Edwards told him that he had been shot. The officer telephoned 911. Edwards told the responding officer that he had been shot by someone outside the car. Edwards was taken to Boston City Hospital, where he died a short time later. An autopsy revealed that a single bullet entered Edwards's body about six inches below his right armpit, traveling nearly straight across his torso, slightly downward, through his diaphragm, liver, aorta, and left kidney, causing death. Because Edwards's clothing had been lost by hospital personnel, it could not be determined whether he had been shot at close range.

The next day the defendant gave Butler one-half the cocaine he took from Edwards. He also admitted that he shot Edwards. When Butler asked why, the defendant said that he wanted "to make it look good." A shell casing found on the front passenger seat of Edwards's car had been discharged from a .25 caliber automatic weapon. The bullet recovered from Edwards's body was consistent with a .25 caliber bullet. The murder weapon was never found.

The defense seized on Edwards's words to the effect that he had been shot by someone outside the car; the testimony of the off-duty officer who heard two shots fired; and the fact that Edwards's clothing had been lost and could not be analyzed for the presence of gun powder residue to determine whether Edwards had been shot at close range. The defense also tried to depict Butler and Clarke as unworthy of belief, based on their involvement with drugs, their criminal records, prior inconsistent statements, and possible motives to lie. Defense counsel also implied that Clarke might have killed Edwards with a .25 caliber handgun he owned.

Com. v. Lucien, 440 Mass. 658, 660-62 (2004).

5

Beyond the evidence presented regarding the crime, the trial involved several other events relevant to Lucien's habeas petition.

### a.   Butler's Testimony and Plea Agreement

Butler was Lucien's partner in the robbery of Mr. Edwards. He testified at Lucien's trial pursuant to a plea agreement, which required that he testify truthfully and plead guilty to unarmed robbery.  See Nov. 22, 1995 Tr. at 84-86.  In exchange for his testimony, the Commonwealth agreed to drop several charges against him and to recommend a sentence of six-to-eight years in prison.

At Lucien's trial, the court permitted the prosecutor to read Butler's entire plea agreement into evidence over defense counsels' objection.  See id. at 80-81.  The plea agreement contained a provision that stated: "If the Commonwealth determines that Jamal Butler has made any false, incomplete or misleading [testimony] . . . the Commonwealth may terminate this agreement and may also prosecute him for any and all offenses that could be charged against him, including but not limited to false statements of perjury and the homicide of Ryan Edwards." Id.

The prosecutor referenced the facts that Butler "pled guilty" and promised to tell the truth in his plea agreement as indicative of his credibility in opening and closing arguments. See Nov. 20, 1995 Tr. at 56; Nov. 27, 1995 Tr. at 111-13.  The trial court instructed the jury to carefully consider Butler's motives in

6

testifying against Lucien. See Nov. 27, 1995 Tr. at 147-48. It
further stated that the government had no way of knowing if Butler
was telling the truth. See id. However, the judge did not instruct
the jury that the fact that Butler had pleaded guilty could not be
considered as evidence of Lucien's guilt. See id.

Lucien's counsel did not object to the instruction. However,
at the time the plea agreement was read into evidence, counsel
objected. After mentioning Commonwealth v. Ciampa, 406 Mass. 257
(1989), he stated: "I mean, there is case law that creates certain
obligations with respect to agreements of this type. I think, you
know, just to protect the record, I'm going to object to the
agreement." Nov. 22, 1995 Tr. at 80.

### b. Decision Not to Call Two Expert Witnesses

Lucien's trial counsel, Robert Sinsheimer, Esq., retained two
expert witnesses to testify at Lucien's trial. Carl Majeskey was
a ballistics expert who was prepared to offer opinion testimony
regarding the probable location of Mr. Edwards's shooter. See
Aff. of Carl M. Majeskey (Respondent's Supplemental Answer ("RSA")
Ex. 3 at 121) ("Majeskey Aff.").[1] Dr. Edward Sussman was a
pathologist who was prepared to offer opinion testimony, based on
Mr. Edwards's gunshot wound, about how far away the shooter

---

[1] Citations to submissions in the state courts refer to the
Respondent's Supplemental Answer ("RSA"), which was submitted to
the court by the Commonwealth.

probably was at the time he shot Mr. Edwards. See Aff. of Edward B. Sussman (RSA Ex. 3 at 74) ("Sussman Aff."). Mr. Sinsheimer did not call either expert to testify.

With his motion for a new trial, Lucien submitted affidavits from each expert as well as from Mr. Sinsheimer. The experts' affidavits each stated that they were willing to testify at trial and briefly explained their testimony. Mr. Sinsheimer's affidavit provided:

> There were two expert witnesses, a Dr. Sussman and a Dr. Majeski [sic], who did not testify during the trial. My decision to not call these witnesses was not based alone on James Lucien's best interest. There was a political component in my decision to not call them. These experts were upset due to the fact that the trial was to begin on the day after Thanksgiving and they had planned vacations during that time. Part of the reason for not asking these witnesses to testify was not wanting to anger them.

Aff. of Robert Sinsheimer ¶4 (RSA Ex. 3 at 62) (emphasis added) ("Sinsheimer Aff.").

### c. The Prosecutor's Decision Not to Introduce Lucien's Prior Conviction for "Armed Robbery"

During a lengthy sidebar conversation between the prosecutor, defense counsel, and the judge, the prosecutor stated: "Your Honor, also for the record, I told Mr. Sinsheimer that on reflection that I thought that if his client were to take the stand, I would not seek to introduce convictions for armed robbery." Nov. 27, 1995 Tr. at 74-75. This sidebar conversation covered several important issues. See id. at 68-77.

8

After the sidebar conversation, defense counsel conferred with Lucien. Lucien was then brought to sidebar, where the court informed him of his right to testify in his own defense. Lucien stated, "I wish not to testify." Id. at 78. The defense then rested.

Mr. Sinsheimer's affidavit states that he urged Lucien not to testify. See Sinsheimer Aff. ¶3. It does not state whether he told Lucien of the prosecutor's decision not to introduce the conviction.

### d. Felony Murder Instruction

After instructing the jury on the first degree murder theories of deliberate premeditation or extreme cruelty, the trial court explained the elements of felony murder as follows:

The defendant is also charged with having committed murder in the commission of a crime punishable by life imprisonment. The statute defining murder allows you to find the defendant guilty of first degree murder if you find the Commonwealth has proven beyond a reasonable doubt that the defendant unlawfully killed the victim in the commission of or attempted commission of a crime, punishable by principle of law. This principle of law is known as the felony murder rule.

The effect of the felony murder rule is to substitute the intent to commit the underlying felony for the malice aforethought as defined earlier required for murder. In order to find the defendant guilty of first degree murder under the felony murder rule, the Commonwealth must prove the following three elements beyond a reasonable doubt. One, that there was an unlawful killing, two, that the killing was committed while the defendant was in the course of committing or attempting to commit a felony punishable by imprisonment for life, and three, that under the circumstances of this case, the defendant

9

committed or attempted to commit the felony with the conscious disregard for human life.

I'll now define each of these three elements for you. First, unlawful killing, and that's what I've already charged you on earlier. Second, that the killing was committed while the defendant was in the course of committing or attempting to commit a felony punishable by imprisonment for life. The defendant here is charged with robbery while being armed, also known as armed robbery. I instruct you that this crime is a felony punishable by life imprisonment. Now, in order for you to decide whether robbery being armed actually occurred in this case, I must instruct you as to the elements of that case, which I will do very shortly, folks. I instruct you that this armed robbery, this crime, is a felony punishable by life imprisonment. If the Commonwealth has proved to you beyond a reasonable doubt that the defendant committed armed robbery or attempted to commit armed robbery and that an unlawful killing was committed in the course of the felony or attempted felony, then the first two requirements of the murder felony will have been satisfied.

See Nov. 28, 1995 Tr. at 166-67 (emphasis added). The trial court concluded the felony murder instruction by explaining when a felony is committed with "conscious disregard for human life." Id. at 168.

## 2. First Motion for a New Trial and Direct Appeal

After his conviction, Lucien filed a direct appeal to the SJC and a motion for a new trial. The motion for a new trial was denied by the trial court. Lucien then consolidated the appeal of the denial of his motion for a new trial with the direct appeal. He raised eight claims before the SJC:

On appeal, the defendant claims that he is entitled to a new trial because (1) the Commonwealth lost the victim's clothing; (2) the judge improperly interfered

10

> with the cross-examination of a Commonwealth witness;
> (3) the judge improperly accepted a witness's invocation
> of the privilege against self-incrimination; (4) the
> prosecutor's closing argument was based on speculation
> and facts not in evidence; and (5) the judge committed
> error in various instructions.  He also alleges error in
> (6) the denial of his motion for a new trial, which
> alleged ineffective assistance of counsel; (7) the
> judge's refusal to consider his amended motion for a new
> trial; and (8) the imposition of a duplicative sentence.
> Finally, he asks us to exercise our power under G.L. c.
> 278, §33E, to reverse his murder conviction.

Lucien, 440 Mass. at 660.  The SJC examined each of the eight

claims.  It vacated one armed robbery conviction as duplicative of

the felony murder conviction.  However, the SJC rejected the

remainder of Lucien's claims and affirmed his convictions.  See

id. at 672-73.

The fifth and sixth claims that Lucien raised in the SJC

correspond to the four claims that he has raised in the instant

§2254 petition.

### a.  Trial Court Jury Instructions

#### i.  Butler's Plea Agreement

Lucien argued that the trial court's failure to instruct the

jury not to consider Butler's guilty plea as evidence against him

violated his right to due process.  Because Lucien's attorney had

not objected to the instruction, the SJC "review[ed this claim] to

determine if any error caused a substantial likelihood of a

miscarriage of justice."  Lucien, 440 Mass. at 666.  The SJC

explained that, under Massachusetts law, it was an open question

11

"whether failure to instruct the jury that they may not consider evidence of the accomplice's guilty plea as evidence against the defendant constitutes error." Id. The SJC declined to answer that question in Lucien's case because it found that "there was no evidence that Butler had pleaded guilty, [and therefore] there was no guilty plea for the jury to consider and no basis for the judge to have given the instruction in question."[2]   Id. at 666-67. Consequently, the SJC found that there was no error. Id. at 667.

### ii. Felony Murder Instruction

The SJC found no error in the trial court's felony murder instruction.   Id. at 668.   It found that the trial court's instruction was more favorable to Lucien than he was entitled to receive because the first sentence of the instruction required that the Commonwealth prove that Lucien killed Mr. Edwards.   Id. Under Massachusetts law, the Commonwealth only had to prove that the killing occurred "in connection with the predicate felony, and at substantially the same time and place," but not that the defendant committed the killing.   Id.

---

[2] As explained below, the court has previously determined that the SJC's factual findings that there had been no guilty plea and, therefore, no evidence of a plea for the jury to consider, were unreasonable in light of the state court record.   See March 22, 2013 Order at 8-9.

12

b.  Ineffective Assistance of Counsel

i.  Failure to Inform Lucien of the Prosecutor's Impeachment Decision

The SJC denied Lucien's claim that his counsel was ineffective for failing to inform him of the prosecutor's decision not to use his prior convictions to impeach him if he testified. Lucien, 440 Mass. at 672. It reviewed the record and agreed with the trial court's finding that counsel must have informed Lucien about the prosecutor's decision. Id. It explained that the trial judge witnessed Lucien and Mr. Sinsheimer conferring immediately after the prosecutor discussed his decision. Therefore, the SJC concluded, the trial court reasonably rejected Lucien's contention that his attorney did not inform him of the prosecutor's decision. Id. The SJC also noted that Mr. Sinsheimer, in his affidavit, "did not indicate any willingness to accept fault for allegedly misadvising the defendant on the impeachment issue." Id. It, therefore, concluded that the trial court did not commit error in finding that counsel told Lucien about the prosecutor's decision. Id.

ii.  Counsel's Decision Not to Call Expert Witnesses

The SJC denied Lucien's ineffective assistance claim based on counsel's failure to call either or both of the two expert witnesses. The SJC noted that "[a]lthough counsel did not disclose any other tactical reason [for failing to call the two expert

13

witnesses], his affidavit makes clear that he had other reasons."
Id. at 670.

With respect to Mr. Majeskey, the SJC found that his testimony
presented a risk of bolstering the prosecution's theory of the
case. See id. at 671. It also found that Mr. Majeskey's affidavit
"contained opinions beyond his field of expertise that concerned
the feasibility of firing a gun from different locations inside
and outside the car, matters for which the jury needed no expert
to assist them." Id. Therefore, the SJC concluded that "there
were tactical reasons, not manifestly unreasonable, why counsel
might not have called [Mr. Majeskey]."

Based on Dr. Sussman's affidavit, the SJC determined that the
testimony he would have given at trial would not have added to the
defense and was consistent with the testimony of the Commonwealth's
pathologist. See id. at 670-71. Therefore, the SJC found that
there was a reasonable tactical basis for the decision not to call
Dr. Sussman and, implicitly, that Lucien was not prejudiced by his
attorney's decision not to present Dr. Sussman's testimony.

### 3. Second Motion for a New Trial

Following the SJC's affirmance of his conviction and denial
of his motion for a new trial, Lucien filed a second motion for a
new trial and a motion for an evidentiary hearing in the trial
court. This motion raised many of the same issues that had been
raised on direct appeal. It also raised a claim that Lucien's

14

trial counsel was ineffective for failing to object to the instruction regarding Butler's plea agreement. The motion further alleged that Lucien's first appellate counsel had been constitutionally ineffective for failing to raise the issue of trial counsel's ineffectiveness in the direct appeal. See Mot. for New Trial and for an Evidentiary Hearing (RSA Ex. 7) ("Second Motion for a New Trial"). The trial court denied the second motion for a new trial because the motion "raise[d] issues that have already been dealt with by the Supreme Judicial Court." See January 20, 2006 Mem. and Order on the Defendant, James Lucien's Motion for a New Trial (RSA Ex. 9) ("Jan. 20, 2006 Mem. and Order").

Pursuant to Massachusetts General Laws chapter 278, §33E, Lucien filed a gatekeeper petition to a Single Justice of the SJC for leave to appeal the denial of his second motion for a new trial. On July 3, 2007, Justice Roderick Ireland denied Lucien's §33E petition because "[t]he issues raised [were] neither new nor substantial." Order Denying Leave to Appeal (RSA Ex. 15).

B.   Habeas Proceedings

Lucien filed the present Writ of Habeas Corpus under 28 U.S.C. §2254 on July 20, 2007. The habeas petition initially asserted five constitutional claims: a claim challenging the SJC's resolution of the due process challenge to the jury instructions, including a challenge to its factual findings regarding Butler's guilty plea; a challenge regarding Lucien's waiver of his right to

15

testify; claims of ineffective assistance of trial and appellate counsel; and a challenge to the trial court's alleged interference in cross-examination. Lucien also requested appointment of counsel.

The court later allowed Lucien to amend his petition to replace his challenge to the trial court's alleged interference in cross-examination with a due process challenge to the trial court's felony murder instruction. See August 27, 2008 Order. On August 2, 2007, the court ordered the Commonwealth to respond to the petition.

On February 17, 2008, the court denied petitioner's request for appointment of counsel without prejudice. The court ordered Lucien to submit a memorandum of law in support of his petition. Lucien did so. He also moved for an evidentiary hearing and for leave to initiate discovery, which the Commonwealth opposed.

On May 16, 2011, the court ordered the parties to file memoranda addressing the impact of the Supreme Court's decision in Cullen v. Pinholster, 131 S.Ct. 1388 (2011), on Lucien's motion for leave to initiate discovery.

On March 22, 2013, the court issued a Memorandum and Order addressing several issues that were presented by Lucien's claims. The court's findings are of particular relevance to Lucien's claims regarding Mr. Butler's guilty plea. As the court explained:

The SJC, in its initial slip opinion, did not decide the question of whether the trial court erred by failing to give a jury instruction regarding Butler's guilty plea because it found that "Butler had not pleaded guilty as of the time he testified, so there was no guilty plea for the jury to consider and no basis for the judge to have given the instruction in question." Commonwealth v. Lucien, No. SJC-07395, slip op. at 12 (Jan. 12, 2004).

After the SJC issued its slip opinion, Lucien filed a motion for rehearing at the SJC, arguing that its determination that Butler had not pled guilty at the time he testified was erroneous.  With his motion for rehearing, Lucien provided the SJC with a copy of the October 23, 1995 transcript of Butler's change of plea hearing, which occurred prior to the commencement of Lucien's trial on November 21, 1995.  In support of his motion for rehearing, petitioner also provided the SJC with citations to the trial record in his case where Butler's plea agreement was offered into evidence and read to the jury, as well as where the prosecutor referred to Butler's guilty plea.

The SJC, in its subsequent published decision, altered the language from its slip opinion regarding Butler's plea.  It again did not decide the question of whether the trial judge erred in failing to instruct the jury regarding Butler's guilty plea "because there was no evidence that Butler had pleaded guilty.  Thus, there was no guilty plea for the jury to consider and no basis for the judge to have given the instruction in question." Lucien, 440 Mass. at 666-67.  The SJC also added a footnote, which was not included in the slip opinion, stating:

> Although the prosecutor improperly stated in his closing argument that Butler had pleaded guilty (there was no evidence to support the argument), there was no objection and the issue was not raised on appeal. We are satisfied that this portion of the argument did not create a substantial likelihood of a miscarriage of justice because the prosecutor did not suggest that the judge's acceptance of Butler's plea was somehow a certification of its accuracy or an endorsement of Butler's truthfulness.

Id. at 667 n.2.

> The SJC's factual determination that there was no
> evidence that Butler had pleaded guilty at the time of
> his testimony at Lucien's trial "shall be presumed to be
> correct," and Lucien has "the burden of rebutting the
> presumption of correctness by clear and convincing
> evidence." 28 U.S.C. §2254(e)(1).   Lucien has met that
> burden.  First, as petitioner pointed out in his motion
> for rehearing to the SJC, Butler's plea agreement was
> entered into evidence at Lucien's trial over defense
> counsel's objection. See Nov. 22, 1995 Trial Tr. at 79-
> 80.   Second, Butler's plea agreement was read to the
> jury.  See id. at 84-86.   Third, Butler testified that
> he had pleaded guilty to a robbery charge.  See Nov. 27,
> 1995 Trial Tr. at 53.  Finally, the prosecutor relied on
> Butler's guilty plea in his closing argument.  See id.
> at 111-12. Respondent does not dispute the fact that
> Butler testified at Lucien's trial pursuant to a plea
> agreement and that the agreement was admitted into
> evidence.  Nor does respondent contend that Butler had
> not pleaded guilty before testifying at Lucien's trial.
>
> The SJC's statement that "there was no evidence that
> Butler had pleaded guilty" is, therefore, contradicted
> by evidence in the record.   Accordingly, the SJC's
> decision not to determine whether the state trial court
> erred by failing to give a limiting jury instruction
> regarding Butler's guilty plea and its decision that the
> prosecutor's reference to Butler's guilty plea in his
> closing argument did not create a substantial likelihood
> of a miscarriage of justice were based on an erroneous
> determination of fact.

March 22, 2013 Mem. and Order at 7-9 (emphasis added).

However, the court denied Lucien's request to initiate
discovery and for an evidentiary hearing, finding that "the court
may not consider new evidence that would be introduced as a result
of discovery and an evidentiary hearing in this case."  Id. at 24.
The court also stated that, "because of the complex legal and

factual issues raised in this case, petitioner's Motion for Appointment of Counsel, which was denied without prejudice, is being allowed." Id. at 2.  The court ordered Lucien's appointed counsel to submit a memorandum addressing several issues raised by Lucien's petition by May 24, 2013.  Id. at 10-23.

On April 16, 2013, the court appointed Sharon Fray-Witzer, Esq., to represent Lucien.  Ms. Fray-Witzer requested and received several extensions of time, but never filed the court-ordered memorandum.  Lucien requested that the court appoint new counsel for him.  On March 24, 2014, the court granted Lucien's request and appointed Susan Church, Esq., to replace Ms. Fray-Witzer as Lucien's counsel.  On July 1, 2014, Lucien, through counsel, submitted a memorandum as ordered by the court in March 2013.  The Commonwealth has submitted a memorandum in response, and Lucien has submitted a reply brief.  As described earlier, he currently advances four constitutional claims.

First, Lucien argues that he was denied due process of law by the trial court's failure to instruct the jury not to consider Butler's guilty plea as evidence of Lucien's guilt (Claim One). He asserts that evidence of the agreement negated the prosecution's burden to prove beyond a reasonable doubt that Lucien was engaged in an armed robbery at the time that Mr. Edwards was killed.  He further argues that the prosecutor's reading the guilty plea into evidence, combined with repeated references to the fact that Butler

had pleaded guilty, rendered the trial so fundamentally unfair that a limiting instruction could not have cured the error.

Second, Lucien argues that the trial judge's felony murder instruction denied him due process of law because it allowed the jury to convict him of felony murder even if it found that Clarke, one of the robbery victims, had shot Mr. Edwards (Claim Two). Massachusetts's definition of felony murder only includes a killing by the defendant or a co-conspirator. Therefore, he maintains that the jury instruction was erroneous and fundamentally unfair.

Third, Lucien claims that his trial counsel was unconstitutionally ineffective for failing to advise him of the prosecutor's decision not to use his "armed robbery" conviction to impeach Lucien (Claim Three). Lucien maintains that, had he been informed of the prosecutor's decision, he would have testified. He states that he would have testified that Clarke and Mr. Edwards were robbing him and that Clarke accidentally shot Mr. Edwards in the process. Lucien also notes that he did not have any prior convictions for armed robbery. Therefore, even if trial counsel did inform him of the prosecutor's decision, he was still left with insufficient information to make a knowing and voluntary waiver of his right to testify.

Fourth, Lucien argues that his trial counsel was unconstitutionally ineffective for failing to present Dr.

Sussman's and Mr. Majeskey's testimony at trial (Claim Four). He contends that the sole reason counsel did not call the witnesses was a desire not to interrupt their vacations. In Lucien's view, the experts' affidavits show that, had they been called to testify, they would have provided testimony tending to show that Lucien did not shoot Mr. Edwards. Therefore, Lucien maintains, the failure to call the experts was manifestly unreasonable and prejudiced Lucien's defense.

Lucien also requests that the court grant him leave to initiate discovery and hold an evidentiary hearing to allow him to support his ineffective assistance of counsel claims. Finally, he requests a stay and abeyance of his habeas petition to allow him to exhaust any claims that the court finds are not exhausted.

III.  LEGAL STANDARDS

A.  Review Under 28 U.S.C. §2254

This court's review of the decisions of the Massachusetts courts is guided by the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 ("AEDPA"). In order to obtain relief, a habeas petitioner in state custody must show that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a).

1.  Deference to State Courts Under AEDPA

The First Circuit has explained:

21

> Under the AEDPA, [federal court] review of state court
> legal and factual determinations is highly deferential.
> When a petitioner presses a claim that was adjudicated
> on the merits in state court, federal habeas courts must
> defer to the state court determination <u>unless</u> it:
>
> > (1) resulted in a decision that was contrary
> > to, or involved an unreasonable application
> > of, clearly established Federal law, as
> > determined by the Supreme Court of the United
> > States; or
> >
> > (2) resulted in a decision that was based on
> > an unreasonable determination of the facts in
> > light of the evidence presented in the State
> > court proceeding.
>
> 28 U.S.C. § 2254(d) (emphasis added).

Teti v. Bender, 507 F.3d 50, 56 (1st Cir. 2007).

Therefore, with respect to evaluating the legal determinations of state courts, AEDPA establishes a deferential standard of review applied by a habeas court for the review of a state court judgment that is rendered "on the merits."  See 28 U.S.C. §2254(d).  However, this standard does not apply to all state court judgments: a judgment on a federal claim is not rendered "on the merits" unless it is decided on federal law grounds.  Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001) (citing 28 U.S.C. §2254(d)).  Accordingly, any federal claims decided on purely state law grounds are subject to de novo review. Norton v. Spencer, 351 F.3d 1, 5 (1st Cir. 2003).

Again, on review of state court legal judgments rendered on the merits of a petitioner's federal claim, the court may issue a

22

writ of habeas corpus only if the judgment was "contrary to clearly established law as established by the Supreme Court," or where the judgment resulted in an "unreasonable application of Supreme Court precedent."  28 U.S.C. §2254(d)(1).

A state court decision is "contrary to" clearly established law in two circumstances: (1) where "the state court applies a rule that contradicts the governing law set forth [in United States Supreme Court] cases"; or (2) where "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

An application of federal law is unreasonable "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-09, 413. The fact that the state court may have reached an incorrect result is not sufficient; the result must be unreasonable. See McCambridge v. Hall, 303 F.3d 24, 36-37 (1st Cir. 2002) (en banc). Where, for example, the state court reaches a result that is "devoid of record support for its conclusion or is arbitrary," the unreasonable application prong is satisfied. Id. at 37.

Relief is also available when the state court's decision "was based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceeding." 28 U.S.C.
§2254(d)(2).  The habeas court must presume that the state court's
factual determinations are correct and must rely on them unless
the petitioner produces "clear and convincing evidence" that they
are incorrect.  28 U.S.C. §2254(e)(1); Coombs v. Maine, 202 F.3d
14, 18 (1st Cir. 2000).  The presumption of correctness applies to
all "basic, primary, or historical facts" underlying the state
court's conclusion.  Sanna v. DiPaolo, 265 F.3d 1, 7 (1st Cir.
2001).  This presumption extends to the factual determinations
made by both state trial and appellate courts.  See Rashad v.
Walsh, 300 F.3d 27, 34 (1st Cir. 2002).

   The First Circuit has explained that §2254(d)(2) must be read
in light of §2254(e)(1).  See Sanna, 265 F.3d at 7.  A federal
habeas court reviewing a state court decision under §2254(d)(2)
must presume that the state court's factual findings are correct.
Id.  However:

> [A] habeas petitioner can rebut this presumption by
> adducing "clear and convincing evidence," 28 U.S.C.
> §2254(e)(1), and a federal habeas court will issue the
> writ if this proffer convinces it that the underlying
> state court's adjudication "resulted in a decision that
> was based on an unreasonable determination of the facts
> in light of the evidence presented in the State court
> proceeding," id. §2254(d)(2).

Id. at 10.  Therefore, §2254(e)(1) provides a gateway for review
under §2254(d)(2).  See, e.g., id.; Ouber v. Guarino, 293 F.3d 19,

27 (1st Cir. 2002); Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

Finally, review under §2254(d) is limited to the state court record. See Cullen, 131 S.Ct. at 1398 ("[R]eview under §2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."); Brown v. O'Brien, 666 F.3d 818, 822 n.3 (1st Cir. 2012) ("Review under the 'fact' prong [i.e., §2254(d)(2)] is limited to the record that was before [the] state court."); Garuti v. Roden, 733 F.3d 18, 23 (1st Cir. 2013) ("[T]he evidentiary hearing bar applies to review under both sections of §2254(d)."). Therefore, the habeas court may not allow discovery or hold an evidentiary hearing unless the petitioner satisfies his burden under §2254(d) based on the evidence presented to the state courts.

### 2. Procedural Default

Even when a petitioner has raised a federal claim in a habeas petition, "[a] federal court will not consider a federal habeas claim 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" Jewett v. Brady, 634 F.3d 67, 76 (1st Cir. 2011) (quoting Walker v. Martin, 131 S.Ct. 1120, 1127 (2011)); see also Coleman v. Thompson, 501 U.S. 722, 729 (1991); Harris v. Reed, 489 U.S. 255, 262 (1989). In deciding whether the state court's denial of a claim rests on an independent and adequate

25

state ground, the federal court looks to the "last reasoned [state court] opinion on the claim." Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

A petitioner's procedural default of a federal claim in state court constitutes an independent and adequate state ground if the state regularly and consistently applies the procedural rule with which the petitioner did not comply and has not waived it by relying on some other ground. See Wainwright v. Sykes, 433 U.S. 72, 87 (1977); Jewett, 634 F.3d at 76. Procedural default is a preliminary issue for a federal court to address before considering the merits of a claim. See Lambrix v. Singletary, 520 U.S. 518, 524 (1997); Lynch v. Ficco, 438 F.3d 35, 47 n.10 (1st Cir. 2006) ("It is customary to address the procedural default issue on habeas first, even if that issue may be more complex than simply turning to the ultimate question, and even when the likely affirmance on the ultimate question is to uphold the state court judgment.").

However, "[i]f the last state court to be presented with a particular federal claim reaches the merits, it removes any [procedural] bar to federal court review that might otherwise have been available." Ylst, 501 U.S. at 801. In addition, the bar to a federal habeas court considering a procedurally defaulted claim "may be lifted . . . if 'the prisoner can demonstrate cause for the [procedural] default [in state court] and actual prejudice as a result of the alleged violation of federal law,'" Maples v.

Thomas, 132 S.Ct. 912, 922 (2012) (quoting Coleman, 501 U.S. at 750), or a fundamental miscarriage of justice, see Coleman, 501 U.S. at 750. These principles are elaborated below.

### B. Ineffective Assistance of Counsel

"To succeed on a claim of ineffective assistance of counsel under the Sixth Amendment, [a movant] must show both deficient performance by counsel and resulting prejudice." Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)); see Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996). "The burden is on the petitioner to demonstrate ineffective assistance by a preponderance of the evidence." Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993).

"In order to satisfy the 'deficient performance' prong, [a movant] must show that his trial counsel's representation 'fell below an objective standard of reasonableness.'" Peralta, 597 F.3d at 79 (quoting Strickland, 466 U.S. at 688). The court must determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge in a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Strickland, 466 U.S. at 690. "The

27

defendant, as a result, must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Phoenix v. Matesanz, 233 F.3d 77, 81 (1st Cir. 2000) (internal citations omitted); see also Prou v. United States, 199 F.3d 37, 47-48 (1st Cir. 1999); Arroyo v. United States, 195 F.3d 54, 55 (1st Cir. 1999).

As to the second prong, "[u]nder Strickland, a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Porter v. McCollum, 558 U.S. 30, 38-39 (2009) (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Peralta, 597 F.3d at 79-80.

In deciding Lucien's ineffective assistance claims, the SJC applied the Massachusetts standard for ineffective assistance of counsel. See Lucien, 440 Mass. at 670. The First Circuit has held that the Massachusetts standard for ineffective assistance is virtually identical to the federal Strickland standard. See Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994). Therefore, the SJC's application of the Massachusetts ineffectiveness standard is equivalent to application of federal law, and its judgment must be reviewed deferentially under the §2254(d). See id.

## C. Federal Review of State-Court Jury Instructions

"Instructions in a state trial are a matter of state law to which substantial deference is owed." Niziolek v. Ashe, 694 F.2d 282 (1st Cir. 1982).[3] "Because federal habeas relief does not lie for errors of state law, federal habeas review of a state court's application of [state law] is limited, at most, to determining whether the state court's finding was so arbitrary or capricious as to constitute an independent due process . . . violation." Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

"Before a federal court may overturn a conviction resulting from a state trial [because of an erroneous jury instruction], it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 147 (1973). "[T]he instruction 'may not be judged in artificial isolation,' but must

---

[3] Lucien cites several cases where reviewing courts overturned decisions based on improper jury instructions given in federal cases. See Susan Church's Mem. in Support of Pet. for Writ of Habeas Corpus at 23-26. A federal court's jury instruction is a matter of federal law. Therefore, it is reviewed more strictly in federal court than a state court's jury instruction. "As the Supreme Court has stated, '[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal.'" Niziolek, 694 F.2d at 290 (quoting Henderson v. Kibbe, 431 U.S. 145, 154 (1977)).

be considered in the context of the instructions as a whole and the trial record." Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp, 414 U.S. at 147). To establish a due process violation, the petitioner must show that the allegedly defective jury instruction "so infected the entire trial that the resulting conviction violates due process." Id.

IV.   ANALYSIS

A.   Challenges to Jury Instructions

Two of Lucien's claims challenge the trial court's jury instructions. He first alleges that the trial court's failure to provide an appropriate limiting instruction regarding Butler's plea agreement was so prejudicial that it violated his right to due process. He next contends that the trial court's allegedly erroneous instruction regarding felony murder denied him due process of law. Neither claim is meritorious.

1.   Claim One: Instruction Concerning the Butler Plea

Lucien argues that the trial judge erred by failing to instruct the jury not to consider Butler's guilty plea as evidence against Lucien. He contends that this error was prejudicial because it allowed the jury to find that Lucien was robbing Mr. Edwards when he was shot based solely on the fact that Butler had pleaded guilty. This, he maintains, effectively negated the prosecutor's burden to prove that Lucien was engaged in a felony at the time Mr. Edwards was shot. Lucien further claims that he

30

was denied due process when the SJC affirmed his conviction based
on an erroneous determination that there was no evidence that
Butler had pleaded guilty at the time he testified at Lucien's
trial.

This claim is procedurally defaulted because Lucien's trial
counsel failed to renew his objection regarding Ciampa. Lucien
has not established cause and prejudice to excuse this procedural
default. Lucien attempts to excuse the procedural default by
arguing that his trial counsel was unconstitutionally ineffective
for failing to object to the instruction. This ineffective
assistance of trial counsel claim is also procedurally defaulted
because it was not raised on direct appeal. Lucien attempts to
excuse that second level of procedural default by alleging that
his appellate counsel was unconstitutionally ineffective for
failing to raise a claim for trial counsel's ineffectiveness on
direct appeal. However, Lucien has not established that appellate
counsel's failure to raise this claim constituted ineffective
assistance of counsel. Therefore, Lucien's ineffective assistance
of trial counsel claim and the underlying due process claim are
procedurally defaulted.

Procedural default is an independent and adequate state
procedural ground for denying Lucien's challenge to the admission
of the Butler plea and the related limiting instruction. Lucien
has not shown that a miscarriage of justice would result if the

31

court does not excuse the procedural default.  Therefore, this claim is procedurally defaulted and does not merit habeas relief.

### a.   Procedural Default of the Jury Instruction Challenge

The SJC held that Lucien's challenge to the instruction regarding the Butler plea was procedurally defaulted because Lucien's attorney did not object to the trial court's proposed instruction.  See Lucien, 440 Mass. at 666.  The fact that the SJC subsequently analyzed the claim under the deferential "substantial likelihood of a miscarriage of justice" standard does not constitute a waiver of the procedural default.   See Horton v. Allen, 370 F.3d 75, 81 (1st Cir. 2004) (citing Gunter v. Maloney, 291 F.3d 74, 79 (1st Cir. 2002)).  Therefore, the fact that the SJC's discretionary review of this claim was, as the court has already found, based on "an erroneous determination of fact," see March 22, 2013 Mem. and Order at 9, is not relevant to the analysis of Lucien's habeas petition unless he can establish that his claim is not procedurally defaulted.[4]

"A state court's decision to find a forfeiture, based on the defendant's failure to object at trial, is an independent and adequate ground for decision so long as the state court

---

[4] However, as explained in §V.A, infra, there are reasons to be concerned that Lucien was denied meaningful state appellate review of his challenge to the jury instruction regarding Butler's plea agreement.

consistently applies its contemporaneous objection rule and has not waived it in the particular case by basing the decision on some other ground." Horton, 370 F.3d at 80-81. The First Circuit has repeatedly held that "the Massachusetts requirement for contemporaneous objections is an independent and adequate state procedural ground, firmly established in the state's jurisprudence and regularly followed in its courts." Hodge v. Mendonsa, 739 F.3d 34, 44 (1st Cir. 2013) (quoting Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010)).

The SJC's determination that Lucien's attorney did not object is presumed to be correct. See 28 U.S.C. §2254(e)(1). Lucien has not presented clear and· convincing evidence to rebut this presumption. Lucien's attorney objected when the plea was introduced. In objecting, he referenced Ciampa, 406 Mass. 257. Ciampa requires trial courts to provide a cautionary jury instruction in certain circumstances when a witness testifies pursuant to a plea agreement. Ciampa, 406 Mass at 263-66. However, Lucien's attorney did not object to the instruction at the time the jury instructions were proposed by the trial court, as required under Massachusetts Rule of Criminal Procedure 24.[5]

---

[5] Massachusetts Rule of Criminal Procedure 24(b) provides, in pertinent part that "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, specifying the matter to which he objects and the grounds of his objection."

Furthermore, in his proposed jury instructions, Lucien's attorney did not request an instruction limiting the purposes for which the plea could be considered.  See Exhibits for Memoranda in Support of Habeas Petition, Ex. A & B (Docket No. 147).[6]  Therefore, Lucien's claim regarding the instruction is procedurally defaulted.  The court cannot reach the merits of his claim unless he can establish cause and prejudice for his procedural default, or show that a failure to excuse his default will result in a miscarriage of justice.  See Maples, 132 S.Ct. at 922.

### i. First Level of Procedural Default

Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750; see also Costa v. Hall, 673 F.3d 16, 25 (1st Cir. 2012). Therefore, the burden of proof is on Lucien to establish both cause and prejudice in order to obtain relief from procedural default on

---

[6] This is a letter that Mr. Sinsheimer sent to the trial court with his requested jury instructions.  It was not included in the state court docket.  It is, therefore, not a part of the state court record provided to this court in the RSA.  Mr. Sinsheimer provided these documents to Lucien's habeas counsel, who provided them to the court.  See Motion to Expand State Record (Docket No. 146).

this theory. Coleman, 501 U.S. at 750. The Supreme Court has "expressly rejected [the] contention that a showing of actual prejudice 'should permit relief even in the absence of cause.'" Murray v. Carrier, 477 U.S. 478, 494 (1986) (quoting Engle v. Isaac, 456 U.S. 107, 134 n.43 (1982)).

Ineffective assistance of counsel may excuse procedural default of a claim on habeas review. See id. at 488. However, only ineffective assistance of counsel that rises to the level of a constitutional violation under the Strickland standard excuses a procedural default. See id. Furthermore, to be a cognizable excuse, the ineffective assistance claim must itself not be procedurally defaulted. See Edwards v. Carpenter, 529 U.S. 446, 450-51 (2000).

Lucien argues that his trial attorney's failure to object to the allegedly improper limiting instruction constitutes ineffective assistance of counsel. He argues that this ineffective assistance of counsel provides cause to excuse his procedural default. Lucien raised this ineffective assistance argument for the first time in his second motion for a new trial. It was denied by the trial court. As required by state law, Lucien then applied to a Single Justice "gatekeeper" of the SJC for leave to appeal the lower court's denial of his second motion for a new trial. See Mass. Gen. Laws c. 278, §33E. In a two-sentence Order, the Single Justice denied Lucien's ineffective assistance claim under

§33E because the issues it raised were "neither new nor substantial." See July 3, 2007 Order Denying Leave to Appeal (RSA Ex. 15).

The First Circuit has held that a Single Justice's finding that issues raised are not "new" under §33E "signals procedural default." Lee v. Corsini, 777 F.3d 46, 57 (1st Cir. 2015); see also Simpson v. Matesanz, 175 F.3d 200, 206 (1st Cir. 1999); Yeboah-Sefah v. Ficco, 556 F.3d 54, 75 (1st Cir. 2009) ("We hold that the single justice's decision to deny full SJC review of petitioner's claim under §33E is based on a procedural waiver, namely, his failure to raise that claim in prior state proceedings, and therefore, rests on an independent and adequate state ground for decision."); Costa, 673 F.3d at 23 ("A Single Justice's finding that a petitioner has not raised a 'new-and-substantial' question for further review constitutes a finding of procedural default under state law.").

"However, when the last state court decision is an unexplained order, there is a 'presumption which gives [it] no effect--which simply 'looks through' [it] to the last reasoned decision.'" Gunter, 291 F.3d at 80 (alterations and emphasis in original) (quoting Ylst, 501 U.S. at 804). The Single Justice's two-sentence order finding that issues are "neither new nor substantial" is not a reasoned decision.

Accordingly, in deciding whether the claims raised in Lucien's second new trial motion were procedurally defaulted, the court must "look[] through" the Single Justice's decision, id., to the state trial court's denial of Lucien's second motion for a new trial, see January 20, 2006 Mem. and Order. In that Memorandum and Order, the trial court stated that Lucien's motion "raises issues that have already been dealt with by the Supreme Judicial Court." Id. at 2. It then stated that it was denying Lucien's motion "for the reasons stated in the Commonwealth's Memorandum in Opposition to the Defendant's Second Motion for New Trial." Id.

In its Memorandum in Opposition, the Commonwealth argued:

A defendant may not use a new trial motion to raise issues that he has already raised or could have raised in a prior new trial motion or appeal. . . . Here, the defendant . . . makes no claim that any of his current claims were previously unavailable. Hence, this court need not consider the claims . . . and will at most consider whether they present a substantial risk of a miscarriage of justice.

Com.'s Mem. in Opp. to the Def.'s Second Motion for New Trial at 10-11 (RSA Ex. 8). By adopting the Commonwealth's argument, the trial court found that the ineffectiveness claim should have been raised on direct appeal. Therefore, regardless of whether the Single Justice's opinion or the trial court's opinion is the last reasoned decision on the merits, the claim is procedurally defaulted. To receive habeas review of this ineffectiveness claim,

he must show cause and prejudice to excuse this "second level of procedural default." Costa, 673 F.3d at 25.

### ii. Second Level of Procedural Default

Lucien argues that his appellate counsel was constitutionally ineffective for failing to raise the ineffective assistance claim in the first motion for a new trial. He argues that this ineffectiveness provides cause to excuse the procedural default for his failure to raise the claim of ineffective assistance of trial counsel on direct appeal.

### a. Standard of Review

"[A]n attorney's errors during an appeal on direct review may provide cause to excuse a procedural default; for if the attorney appointed by the State to pursue the direct appeal is ineffective, the petitioner has been denied fair process and the opportunity to comply with the State's procedures and obtain an adjudication on the merits of his claims." Martinez v. Ryan, 132 S.Ct. 1309, 1317 (2012). "[C]ounsel's failure to raise a particular claim on appeal is to be scrutinized under the cause and prejudice standard when that failure is treated as a procedural default by the state courts. Attorney error short of ineffective assistance of counsel does not does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial." Murray, 477 U.S. at 478 (emphasis in original).

The <u>Strickland</u> standard for ineffective assistance of counsel governs claims of ineffective assistance of appellate counsel. See <u>Smith v. Robbins</u>, 528 U.S. 259, 285-86 (2000). As the Supreme Court has explained:

> [A petitioner] must first show that his counsel was objectively unreasonable, see <u>Strickland</u>, 466 U.S. at 687-691, in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [the petitioner] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, <u>he must show a reasonable probability that, but for his counsel's unreasonable failure [to raise the issue on appeal], he would have prevailed on his appeal.</u> See <u>id.</u>, at 694 (defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

<u>Id.</u> (emphasis added).

Lucien first raised a claim for ineffective assistance of appellate counsel in his Second Motion for a New Trial. See Mem. in Support of Mot. for a New Trial and for an Evidentiary Hearing at 34 (RSA Ex. 7). The SJC could not have addressed this issue earlier because the alleged ineffectiveness occurred in the proceedings before the SJC on appeal. As explained previously, the Single Justice's Order provided no reasons for the denial of Lucien's second motion for a new trial on the basis that the "issues raised are neither new nor substantial." July 3, 2007 Order Denying Leave to Appeal (RSA Ex. 15). Similarly, the trial court did not discuss any of Lucien's specific claims. Instead,

it adopted the Commonwealth's arguments.   January 20, 2006 Mem.
and Order at 2.   The Commonwealth did not argue that the
ineffective assistance of appellate counsel claim was procedurally
defaulted.   Instead, it argued that the claim was not meritorious
because the SJC had reviewed Lucien's conviction under §33E and
did not reverse it.   More specifically, the Commonwealth argued:

> [t]he Supreme Judicial Court has ruled that the absence
> of an instruction that the jury could not consider
> Butler's guilty plea as evidence of the defendant's
> guilt did not warrant a new trial.   Lucien, 440 Mass.
> 666-67.   The defendant's attempt to recast this issue in
> terms of ineffectiveness (D.M. 28-33) cannot succeed, as
> the standard of review under §33E is more favorable to
> him that the ineffectiveness standard.   Commonwealth v.
> Gaboriault, 439 Mass. 84, 90 (2003).   Accordingly, an
> attorney cannot be deemed ineffective for failing to
> object to an error that did not require reversal under
> §33E.   Commonwealth v. Maynard, 436 Mass 558, 572-73
> (2002).

Com.'s Mem. in Opp. to the Def.'s Second Motion for New Trial at
12.   By adopting this reasoning, see Jan. 20, 2006 Mem. and Order
at 2, the trial court rejected Lucien's claim on the merits.[7]

---

[7] Even if the Single Justice's Order is the proper focus for
analysis, Lucien's claim is not procedurally defaulted.   The
ineffective assistance of appellate counsel claim was a "new" claim
in the second new trial motion.   "[I]t is only the failure to
satisfy the 'new' prong of the §33E rule that signals procedural
default.'"   Lee, 777 F.3d at 57.   "Under Massachusetts law, a claim
is not "new" within the meaning of §33E where it 'has already been
addressed, or where it could have been addressed had the defendant
properly raised it at trial or on direct review.'"   Costa, 673
F.3d at 23 (quoting Com. v. Gunter, 459 Mass. 480, 487 (2011),
cert. denied, 132 S.Ct. 218 (2011)).   Lucien's second motion for
new trial was the first motion that he filed after the SJC denied
his direct appeal.   Accordingly, it was the first time that he
could challenge the effectiveness of his appellate counsel.   The

Therefore, Lucien's claim for ineffective assistance of appellate counsel is not procedurally defaulted because the last reasoned state court decision addressed this claim on the merits. See Ylst, 501 U.S. at 801.

Ordinarily, even an unexplained state court's decision "on the merits" of a federal claim must be reviewed under the deferential framework of 28 U.S.C. §2254(d). See Harrington v. Richter, 562 U.S. 86, 98 (Deference under §2254(d) "does not require that there be an opinion from the state court explaining the state court's reasoning."). However, in this case, the trial court's denial of Lucien's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2).

The trial court's decision was based on the Commonwealth's assertion that the SJC's "thorough review of the entire record pursuant to §33E defeats the defendant's claim that his failure to succeed on his direct appeal can be attributed to ineffectiveness on the part of his appellate counsel." Com.'s Mem. in Opp. to the Def.'s Second Motion for New Trial at 12. The court has already found, pursuant to §2254(d)(2) and (e)(1), that the SJC's analysis

_____

challenge would be a "new" claim within the meaning of §33E. See Costa, 673 F.3d at 23. Because Lucien's ineffective assistance of counsel was a "new" claim in the second motion for a new trial, it is not procedurally defaulted. Lee, 777 F.3d at 57.

41

of the instruction concerning the Butler plea was "based on an erroneous determination of fact."  See March 22, 2013 Mem. and Order at 9.  The trial court's denial of the ineffectiveness claim relied on the SJC's incorrect factual determination.  Therefore, Lucien has shown, by "clear and convincing evidence," 28 U.S.C. §2254(e)(1), that the state court decision on the merits of his ineffective assistance of appellate counsel claim was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. §2254(d)(2).  Because Lucien has met his burden under §2254(d), the court must review Lucien's claim for ineffective assistance of appellate counsel de novo.  See Teti, 507 F.3d at 56.

### b.  Analysis

If Lucien's appellate counsel had asserted a claim for ineffective assistance of trial counsel on direct appeal, the SJC would have asked "whether there was an error in the course of the trial . . . , and, if there was, whether that error was likely to have influenced the jury's conclusion." Lucien, 440 Mass. at 670 (quoting Com. v. Wright, 411 Mass. 678, 682 (1992)).  Under Massachusetts law, there was no error in failing to instruct the jury not to consider a witness's plea agreement as evidence against the defendant.  Furthermore, even if the instruction was erroneous, Lucien was not prejudiced by the error.  Therefore, even if appellate counsel had raised the ineffectiveness claim, there is

42

not a "reasonable probability" that Lucien would have prevailed on his appeal.  Smith, 528 U.S. at 285.  Accordingly, the ineffective assistance of appellate counsel claim is not meritorious. Therefore, Lucien has not established at least the prejudice required to overcome his second level of procedural default concerning the alleged ineffectiveness of trial counsel.  See Costa, 673 F.3d at 25; Lynch, 438 F.3d at 50.

The trial court's instruction was not erroneous under Massachusetts law.  Lucien relies on Ciampa to argue that the trial court was required to instruct the jury that Butler's guilty plea was not evidence against Lucien.  He further argues that, based on the rule established in Ciampa, trial counsel was unconstitutionally ineffective for failing to object to the lack of such an instruction.  However, under Ciampa, such an instruction was not required.

In Ciampa, a witness testified pursuant to a plea agreement that provided that, in exchange for the witness's "complete and honest testimony," the prosecution would recommend a certain sentence.  406 Mass. at 259.  The trial court allowed the prosecution to enter the guilty plea into evidence with minor redactions.  See id. at 260-61.  The prosecutor "read the agreement to [the witness] paragraph by paragraph and ask[ed] him if what was read to him was his understanding of each paragraph."  Id.  He also elicited the witness's "testimony that his attorney signed a

43

statement representing that [the witness] understood the agreement, that the attorney had reviewed the agreement with him, and that the attorney believed that [his] decision to enter into the agreement was an informed and voluntary one." Id. at 261.

The trial court instructed the jury that it should use its own "good judgment" in evaluating the witness's testimony, and that it could "consider the [plea] agreement and any hopes the witness may have as to future advantages in judging his credibility." Id. at 263 n.8. The jury found Ciampa and his co-defendants guilty.

The SJC reversed the convictions and remanded for a new trial. It began by observing that "testimony pursuant to a plea agreement, founded on a promise of truthful cooperation, and the plea agreement itself are admissible." Id. at 261. However, the SJC explained, "[t]he [trial] judge erred in the manner in which she handled the plea agreement." Id. at 262.

First, the SJC explained, the trial judge should have redacted certain portions of the plea agreement, such as: a statement that the agreement was contingent on the witness's truthful representation to the Commonwealth that he did not commit certain criminal acts with which defendants were charged; a statement that the witness "would be placed in a program to protect his life and safety"; and repeated references to the witness's obligation to tell the truth. Id.

44

Second, the SJC found that "[t]he prejudice from admission of the plea agreement with damaging provisions not deleted and from [the witness's] testimony concerning his attorney's involvement with the plea agreement was not alleviated by the judge's charge . . . [The trial court's instruction] insufficiently conveys a need for caution as to [the witness's] testimony." Id. at 263.

The SJC identified several deficiencies with the trial judge's jury instruction. The instruction: did not "direct the jury's attention to the potential influences of the plea agreement on [the witness's] credibility"; did not "dispel any implication inherent in the plea agreement . . . that the government knew or was warranting that [the witness] was telling the truth"; did not "tell the jury to weigh [the witness's] testimony with care and not to consider [the witness's] guilty plea as evidence against the defendant[]"; did not "adequately focus the jury's attention on the incentives that could have influenced [the witness's] testimony; did not "warn the jury that, in entering into the agreement and presenting him as a witness, the government did not know whether [the witness] was telling the truth"; and did not "emphasize that [the witness's] truthfulness [is] solely a question for the jury to decide." Id. at 263-64 (emphasis added).

The SJC stated that "[o]nly by a cautionary instruction covering these points could the jury have been in a position to

evaluate the impact of the plea agreement and testimony presented pursuant to it." Id. at 264.  It concluded:

> We do not prescribe particular words that a judge should use [in a jury instruction].  We do expect, however, that a judge will focus the jury's attention on the particular care they must give in evaluating testimony given pursuant to a plea agreement that is contingent on the witness's telling the truth.

Id. at 266.

The court finds that this last statement represents the holding of Ciampa.  Read in isolation, the SJC's statement that "[o]nly by a cautionary instruction covering the[ above] points could the jury" effectively evaluate the witness's testimony could be understood to require that the trial court must always instruct the jury, among other things, "not to consider [a witness's] guilty plea as evidence against the defendant[.]"   Id. at 263-64. However, the SJC disavowed such a strict rule when it stated that it was not "prescrib[ing] particular words that a judge should use."  Id. at 266.

As the SJC explained in Lucien's direct appeal, Massachusetts law "left open the question whether the failure to instruct the jury that they may not consider evidence of the accomplice's guilty plea as evidence against the defendant constitutes error." Id. at 666 (citing Com. v. Prater, 431 Mass. 86, 98 (2000)).   Cases decided after Ciampa show that a trial court's failure to include specific statements, the omission of which the SJC regarded as

46

defects in the trial court's instruction in Ciampa, does not necessarily constitute error. Rather, "the fundamental concern of [Ciampa is] that the jury not be led to believe that the prosecution has some superior ability to ascertain whether the witness's testimony is truthful." Com. v. Rolon, 438 Mass. 808, 815 n.5 (2003); see also Com. v. Sullivan, 410 Mass. 521, 525 (1991). Ciampa, therefore, required only that the judge "'focus the jury's attention on the particular care they must give in evaluating testimony given pursuant to a plea agreement[.]'" Com. v. Rosario, 460 Mass. 181, 189 (2011) (quoting Ciampa, 406 Mass. at 266).[8]

The court's instruction at Lucien's trial satisfied this requirement. Butler's plea agreement was read into evidence at the end of his testimony. See Nov. 22, 1995 Tr. at 84-86.[9] Like

---

[8] Rosario was decided after Lucien's direct appeal. It is cited only to show that the SJC has consistently construed Ciampa to provide a general framework for cautionary instructions, not to require that specific words be used in every instruction.

[9] The agreement stated, in part:

> Jamal Butler will cooperate fully with law enforcement officers and the Commonwealth's attorneys. He must provide complete and truthful information to all law enforcement officers. If his testimony is requested, he must testify truthfully and completely before any Grand Jury and at any hearing and trial. He must answer all questions put to him. . . .
>
> In return for Jamal Butler's complete and truthful cooperation, the Commonwealth agrees to recommend a sentence of six to eight years [upon Butler pleading

the agreement in Ciampa, it contained several references to Butler's obligation to tell the truth. However, the other problematic aspects of the agreement identified by the SJC in Ciampa were not present in Lucien's agreement. See Ciampa, 406 Mass. at 262.[10]

---

guilty to unarmed robbery, and will decline to prosecute Butler for second degree murder or a second count of unarmed robbery]. . . .

If the Commonwealth determines that Jamal Butler has made any false, incomplete or misleading statement to any law enforcement personnel, Grand Jury or Court after the date of this agreement, the Commonwealth may terminate this agreement and may also prosecute him for any and all offenses that could be charged against him, including but not limited to false statements of perjury and the homicide of Ryan Edwards. Furthermore, Jamal Butler fully understands that should he breach any provision of this agreement, the Commonwealth would have the right to use against him at any trial, hearing, or for sentencing purposes, any statements made by him and any information, material, documents or objects provided by him to the Commonwealth without limitation. . . .

Nov. 22, 1995 Tr. at 84-86.

[10] The SJC has suggested that a less stringent limiting instruction than the one prescribed in Ciampa may be appropriate in cases where the written plea agreement does not share the prejudicial aspects of the Ciampa plea. See Com. v. Sullivan, 410 Mass. 521, 525 (1991) ("Second, the plea agreement in Ciampa stated that it was contingent upon the truth of the witness's assertion that he did not shoot the victim. That statement, we said, could be interpreted by the jury 'as asserting the Commonwealth's reasoned conclusion that [the witness's] representation was correct.' Id. at 262. No such statement appears in Grace's plea agreement. Third, the agreement which went to the jury in Ciampa contained references to the government's commitment to place the witness in a program designed to protect his life and safety, which we held improper because it implied that the government believed that the witness had something to fear from the defendants. Id. In this case, the

The trial court immediately provided a cautionary instruction after the agreement was read into evidence.[11]  It also provided an instruction regarding Butler's plea agreement in its final jury instructions.[12]

_____

portion of the agreement which referred to the government's obligation to protect the witness was removed and never seen by the jury.").  The statements discussed in Sullivan were not present in Butler's plea agreement.

[11] After Butler's plea agreement was read into evidence, the trial court immediately instructed the jury:

> In [the agreement] it indicates that the obligation of Mr. Butler is to tell the truth completely to all the questions before a Grand Jury and any trial.  I just want to say this, folks, that the Commonwealth has no way of knowing whether or not a witness is telling the truth or not.  And they cannot vouch for that truth. That is totally and completely up to our Jury, which Jury that's your function.  Only you can determine, the Commonwealth cannot vouch for it.  It's totally and completely up for your determination and judgment based on all the evidence and what you've heard here, folks.

Nov. 22, 1995 Tr. at 82.

[12] In its final jury instructions, the court stated:

> There has been evidence in this case that one of the Commonwealth's witnesses entered into what is known as an agreement with the Commonwealth.  The agreement has been entered into evidence as an exhibit.  The fact that this witness testified pursuant to such an agreement, should cause you to examine his testimony with extra care and caution.  The fact that the Commonwealth has entered into an agreement with the witness does nothing to change the fact of the determination of the witness's truthfulness.  It's solely a question for you the jury. Nor does the requirement in the agreement that the witness testified truthfully mean that the government has a way of knowing that the witness is telling the truth.

The trial court's jury instructions focused the jury's attention on the several important credibility issues regarding Butler. The instruction stated that: the jury should examine Butler's testimony with extra care because he was testifying pursuant to a plea agreement and had motives to testify untruthfully; it was solely the jury's prerogative to determine if Butler was truthful; the truthful testimony requirement in the agreement did not mean that the government has any way of knowing whether Butler told the truth; and the jury should evaluate Butler's credibility in light of any "rewards or inducements or benefits" that he was receiving because of his agreement to testify. See Nov. 27, 1995 Tr. at 147-48. The court did not instruct the jury that Butler's guilty plea could not be considered as evidence of Lucien's guilt. However, viewing the instruction as a whole, Estelle, 501 U.S. at 72, the court finds it met the standard established by Ciampa. Accordingly, the instruction was not erroneous under Massachusetts law.

---

> You should consider the motivation of the witness in testifying and what rewards or inducements or benefits are flowing to that witness as a consequence of that witness's testimony and if any will those promises in any way affect the credibility of this particular witness.

Nov. 27, 1995 Tr. at 147-48.

Furthermore, even if the instruction constituted error under Massachusetts law, the lack of a specific statement that the jury could not consider Butler's guilty plea as evidence against Lucien was not "likely to have influenced the jury's conclusion" that Lucien was guilty. Lucien, 440 Mass. at 670 (quoting Wright, 411 Mass. at 682). The trial court explained that the government had no way of knowing whether Butler was being truthful. It admonished the jury to weigh whether he had incentives to fabricate testimony because of the lighter sentence he was receiving. It also stated that "[t]he fact that the Commonwealth has entered into an agreement with the witness does nothing to change the fact of the determination of the witness's truthfulness." Nov. 27, 1995 Tr. at 148. The instruction informed the jury that: the fact that Butler pled guilty did not relieve the jury of its duty to decide if his testimony was truthful--including concerning whether he was guilty of the charges to which he pled; the plea agreement should be considered because it provided a motive for Butler to fabricate his testimony; and, therefore, his testimony should be examined with extra care and caution. The thrust of the jury instruction was that the guilty plea required heightened scrutiny of Butler's testimony. Consequently, there is not a "reasonable probability that, but for [the allegedly erroneous jury instruction], the result of the proceeding would have been different." Lynch, 438 F.3d at 46 (quoting Strickland, 466 U.S. at 694).

This conclusion is not altered by Lucien's argument that the prosecutor's statements during closing argument made the alleged error in the instruction particularly prejudicial.   In closing, the prosecutor argued that Butler's testimony that he was involved in the robbery with Lucien was credible because he was going to jail for admitting his involvement in the robbery.   See Nov. 28, 1995 Tr. at 112-13.13   This was not improper.   Ciampa expressly

---

13 In closing argument, the prosecutor stated:

> Well, you look at Jamal Butler, and you should scrutinize his testimony.   . . .   My God, the man was charged with murder and robbery, not armed robbery, because based upon the evidence which you've heard so far, which would have been offered against Jamal Butler, there was no evidence that he knew about a gun.   . . .

> Based upon the evidence that [Butler] saw against him[self] . . . he pled guilty and he agreed to cooperate.   He agreed to tell what he saw.   He wasn't told what to say on the witness stand. . . .   Scrutinize his testimony and if it's not corroborated by other witnesses, you should discard it.   But it's corroborated, because what he saw, he admits . . . that he was involved in a robbery [with James Lucien].   That's corroborated by Ericka Jones.   That's corroborated by Alfred Clarke.   And most importantly, it's corroborated by Jamal Butler, because Jamal Butler is going to do four or five years in jail, and if you think that Jamal Butler took the stand and he wasn't involved in any robbery with this man and he's just decided to spend five years, the next five years, of his life in jail for this, I suggest that's the best motive for him to be truthful, because he's going to jail for his part in the robbery.   He didn't say he was in the car, he didn't say he saw what happened in the car after the car left.   He told you his involvement in the robbery.

states that prosecutors may "argue that . . . a witness is credible" so long as they do not "explicitly or implicitly vouch" for a witness. 406 Mass. at 265.

Massachusetts and federal law are consistent concerning improper vouching. See Ciampa, 406 Mass. at 265 (citing United States v. Martin, 815 F.2d 818, 822-23 (1st Cir. 1987)); Com. v. McCoy, 59 Mass. App. Ct. 284, 296 n.7 (2003) (citing United States v. Torres-Galindo, 206 F.3d 136, 142 (1st Cir. 2000)). Improper vouching occurs "when [a prosecutor] places the prestige of her office behind the government's case by . . . imparting her personal belief in a witness's veracity or implying that the jury should credit the prosecution's evidence simply because the government can be trusted." United States v. Perez-Ruiz, 353 F.3d 1, 9 (1st Cir. 2003); Com. v. Sanders, 451 Mass. 290, 296-97 (2008). "However, an argument that does no more than assert reasons why a witness ought to be accepted as truthful by the jury is not improper witness vouching." United States v. Rodriguez, 215 F.3d 110, 123 (1st Cir. 2000). It is not vouching for a prosecutor, in closing argument, to "argue reasonable inferences from the plea agreement[.]" Ciampa, 406 Mass. at 265. Defense counsel often argue that jurors should infer that a cooperating witness lied to

---

Nov. 27, 1995 Tr. at 111-13. Trial counsel made several objections to the prosecutor's closing argument at sidebar, none of which concerned references to Butler's plea agreement. Id. at 132-35.

get a lenient sentence. It is reasonable for a prosecutor to argue that a witness should be found credible in part because of an agreement to accept a significant sentence. See Perez-Ruiz, 353 F.3d at 9-10 (prosecutor did not vouch for witness by arguing that, if witness were to lie, he would lie to his own benefit). The prosecutor's argument at Lucien's trial was not improper and, in any event, did not prejudice Lucien.

In summary, in the context of the instructions as a whole, it was not error for the court not to instruct that Butler's guilty plea was not evidence of Lucien's guilt and, if it was error, Lucien has not proved the required prejudice. Trial counsel's failure to request such an instruction was, therefore, not ineffective assistance under either Massachusetts or federal law. See Lucien, 440 Mass. at 670; Strickland, 466 U.S. at 687. Had appellate counsel raised this claim, there is no "reasonable probability that . . . [Lucien] would have prevailed on his appeal." Smith, 528 U.S. at 285-86. Accordingly, Lucien has not shown that appellate counsel's failure to raise this claim on direct appeal prejudiced him. Id.

Therefore, Lucien has not proven his claim of ineffective assistance of appellate counsel. See Strickland, 466 U.S. at 687. Because appellate counsel was not ineffective, Lucien has not proven cause to excuse his procedural default of the underlying

ineffective assistance of trial counsel claim.   See Murray, 477 U.S. at 494.

While both prongs of the Strickland inquiry for ineffective assistance of counsel concern the "separate 'cause' as opposed to the 'prejudice' standard for overcoming default," a failure to find prejudice under the Strickland inquiry forecloses a finding of the prejudice necessary to excuse a procedural default.   See Lynch, 438 F.3d at 50.   Because Lucien was not denied constitutionally adequate assistance of appellate counsel, he "has shown neither cause for nor prejudice from [his] second level of procedural default."   Costa, 673 F.3d at 25; see also Coleman, 501 U.S. at 753-54.

### c.   Miscarriage of Justice

In the absence of cause and prejudice, Lucien's procedurally defaulted claim may be reached only if failure to address the claim would result in a "fundamental miscarriage of justice."   Coleman, 501 U.S. at 759.   Lucien has not met this burden.

"The cause and prejudice requirement . . . shows due regard for States' finality and comity interests while ensuring that 'fundamental fairness [remains] the central concern of the writ of habeas corpus.'"   Maples, 132 S.Ct. at 927 (alteration in original) (quoting Dretke v. Haley, 541 U.S. 386, 393 (2004)) (internal quotation marks omitted).   This balance is struck by permitting federal courts to consider the merits of defaulted claims without

a showing of cause and prejudice if the petitioner "demonstrate[s]
that failure to consider the federal claim will result in a
'fundamental miscarriage of justice.'" Coleman, 501 U.S. at 750
(quoting Murray, 477 U.S. at 495).

"To ensure that the fundamental miscarriage of justice
exception would remain 'rare' and would only be applied in the
'extraordinary case,' while at the same time ensuring that the
exception would extend relief to those who were truly deserving,"
the Supreme Court has "explicitly tied the miscarriage of justice
exception to the petitioner's innocence." Schlup v. Delo, 513
U.S. 298, 321 (1995). "'To be credible,' [a claim of innocence]
requires 'new reliable evidence—whether it be exculpatory
scientific evidence, trustworthy eyewitness accounts, or critical
physical evidence—that was not presented at trial.'" House v.
Bell, 547 U.S. 518, 537 (2006) (quoting Schlup, 513 U.S. at 324);
Riva v. Ficco, No. 14-1994, slip op. at 16 (1st Cir. Sept. 29,
2015).

To establish actual innocence, a petitioner must "show that
'a constitutional violation has probably resulted in the
conviction of one who is actually innocent.'" Id. at 327 (quoting
Murray, 477 U.S. at 496). This standard of "probability" is
satisfied only when the petitioner "demonstrate[s] that, 'in light
of all the evidence,' 'it is more likely than not that no
reasonable juror would have convicted him.'" Bousley v. United

56

States, 523 U.S. 614, 623 (1998) (quoting Schlup, 513 U.S. at 227-28).   Furthermore, "'actual innocence' means factual innocence, not mere legal insufficiency." Id. (emphasis added).   If actual innocence is demonstrated, that finding serves not as an independent basis for post-conviction relief, but as a "gateway" that, when proven, allows a habeas court to review the merits of otherwise defaulted claims.   See, e.g., Herrera v. Collins, 506 U.S. 390, 416 (1993); Goldman v. Winn, 565 F. Supp. 2d 200, 222 (D. Mass. 2008).

Lucien has not presented "new reliable evidence" that shows that it is "more likely than not any reasonable juror would have reasonable doubt" regarding his guilt. House, 547 U.S. at 537-38 (internal quotation marks omitted).   Therefore, he has failed to show that a fundamental miscarriage of justice will result if the court does not decide the merits of this claim.   See Schlup, 513 U.S. at 327.

Because Lucien has not established a basis on which this court has the authority to decide the merits of the procedurally defaulted claim, it is not a meritorious ground for habeas relief.

### d.   Prosecutor's Statements

As part of his claim regarding the lack of an adequate instruction concerning Butler's guilty plea, Lucien contends that the prosecutor's repeated references to Butler's plea in his opening and closing arguments rendered the trial fundamentally

unfair and deprived him of due process. He argues that these statements were so prejudicial that an instruction could not have cured the error. To the extent that this states a distinct claim from the claim regarding the jury instruction, it is procedurally defaulted.

The SJC found that any claims regarding the prosecutor's references to Butler's guilty plea were procedurally defaulted because "there was no objection and the issue was not raised on appeal." Lucien, 440 Mass. at 667 n.2. It is correct that Lucien's attorney did not object to the prosecutor's allegedly improper remarks. See supra note 13. Lucien relies on the same cause and prejudice, and miscarriage of justice arguments, the court has already found to be unmeritorious to overcome this procedural default. Therefore, the court does not have the authority to review this claim because it was denied on an independent and adequate state ground.

### e. Related Sixth Amendment Jury-Trial Right Claim

Lucien also argues that he was denied his Sixth Amendment right to trial by jury because "when the trial court allowed the prosecutor to suggest that certain evidence was clear proof of the underlying robbery, without offering a clarifying instruction, the trial judge effectively reduced the level of proof necessary for the Government to carry its burden." Susan Church's Mem. in Support of Pet. for Writ of Habeas Corpus at 30. Like the due

process claim, this claim challenges the trial court's instructions and the prosecutor's remarks. For the reasons explained earlier, this claim is procedurally defaulted.

> f.   Related Claim for Ineffective Assistance of Appellate Counsel

On April 3, 2015, Lucien himself filed a pro se motion requesting that the court consider ineffective assistance of appellate counsel as a separate ground for habeas relief. He asks the court to consider his ineffective assistance of appellate counsel argument as both a means of excusing his procedural default and as an independent claim for habeas relief.

Lucien is represented by counsel in this habeas proceeding. Therefore, the court is not required to consider the submissions made by Lucien personally. See United States v. Tracy, 989 F.2d 1279, 1285 (1st Cir. 1993). It is not appropriate to do so in this case. In a thorough and well-researched memorandum, Lucien's experienced habeas counsel chose not to pursue ineffective assistance of appellate counsel as an independent ground for relief.

In any event, the court has found that Lucien was not prejudiced by appellate counsel's alleged ineffectiveness. Therefore, the claim for ineffective assistance of appellate counsel is not meritorious. See Strickland, 466 U.S. at 687.

59

In view of the foregoing, Lucien's claims that the admission of the Butler guilty plea, the prosecutor's remarks, and the trial court's instructions violated his federal rights are procedurally defaulted. Lucien has not provided a proper basis for this court to review the merits of his first federal claim. Therefore, Claim One is being dismissed.

### 2. Claim Two: Felony Murder Instruction

Lucien argues that the trial court's instruction would have allowed the jury to find him guilty of felony murder even if Mr. Edwards was shot by someone other than Lucien or his co-conspirator. Because Massachusetts law does not include a killing by the victim of a felony acting in self-defense within its definition of felony murder, he maintains that this instruction was erroneous and denied him due process of law. The SJC reasonably determined that the trial court's instruction was more favorable to Lucien than state law required. Therefore, this claim does not merit habeas relief.

Because the SJC decided this claim on the merits, the court reviews it only for an unreasonable application of Supreme Court precedent, 28 U.S.C. §2254(d)(1), and to determine whether the decision was based on an unreasonable determination of the facts, 28 U.S.C. §2254(d)(2). As explained earlier, the court cannot grant relief unless "the ailing instruction by itself so infected

the entire trial that the resulting conviction violates due process." Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 147).

As the SJC explained, under Massachusetts law:

A defendant need not commit an unlawful killing to be responsible for murder in the first degree under the felony-murder theory, even if the Commonwealth does not proceed under a theory of joint venture. As long as the unlawful killing occurs in connection with the predicate felony, and at substantially the same time and place, it does not matter that the defendant did not kill the victim: he is responsible for murder.

Lucien, 440 Mass. at 668.  However, Massachusetts law provides that a defendant cannot be held liable for felony murder "for the death of any person killed by someone resisting the commission of the felony." Com. v. Balliro, 349 Mass. 505, 515 (1965). Lucien's theory at trial was that Clarke, who was a victim of Lucien's robbery, accidentally shot Mr. Edwards.

The jury instruction, read "as a whole," Estelle 501 U.S. at 72, was more favorable to Lucien than Massachusetts law required.[14] The trial court's initial instruction was that, to prove that Lucien was guilty of felony murder, the Commonwealth had to prove beyond a reasonable doubt that "the defendant unlawfully killed the victim." See Nov. 28, 1995 Tr. at 166.  This statement is more favorable to Lucien than required by Massachusetts law, which did not require the Commonwealth to prove that Lucien killed Mr.

_____

[14] The trial court's felony murder instruction is reproduced in §II.A.1(d), supra.

Edwards.   See Lucien, 440 Mass. at 668.   The court never contradicted this statement.  However, the court used the passive voice in the remainder of the instruction, not specifying that the killing had to be by either Lucien or his co-conspirator.  See Nov. 28, 1995 Tr. at 166-67 (stating that the Commonwealth must prove "that there was an unlawful killing . . . [and] that the killing was committed while the defendant was in the course of a felony") (emphasis added).   However, because of the initial, uncontradicted statement, a reasonable jury could have understood that Lucien was not guilty of felony murder unless he shot Mr. Edwards.   Consequently, the SJC reasonably determined that the instruction was more favorable to Lucien than Massachusetts law required.   Because Lucien received an instruction that was more favorable than required under state law, he was not denied due process of law.  See Estelle 502 U.S. at 72.

In view of the foregoing, Lucien has not established that the SJC's denial of his challenge to the felony murder instruction was "contrary to, or involved an unreasonable application of, federal law."   28 U.S.C. §2254(d)(1).     Therefore, Claim Two is being dismissed.

## B.   Ineffective Assistance of Counsel Claims

Petitioner asserts two claims of ineffective assistance of counsel.  First, he argues that his trial counsel was ineffective for failing to inform him that the prosecutor had agreed not to

introduce a prior conviction if he testified at trial. Second, he argues that trial counsel was ineffective for failing to call two expert witnesses who were prepared to testify for Lucien's defense. Each of these claims was exhausted in the state courts and was decided on the merits by the SJC. See Lucien, 440 Mass. at 670-71. Therefore, AEDPA's deferential standard of review under §2254(d) applies to these claims.

As explained earlier, under AEDPA, the court may review the SJC's decision only to determine whether it was an unreasonable application of the Strickland standard, 28 U.S.C. §2254(d)(1), or whether it was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. §2254(d)(2). The SJC's factual findings are presumed to be correct, and can only be rebutted by clear and convincing evidence. 28 U.S.C. §2254(e)(1). The AEDPA standard of review is "difficult to meet" when the petitioner alleges "a departure from a very general standard such as that set forth in Strickland v. Washington." Tevlin v. Spencer, 621 F.3d 58, 65 (1st Cir. 2010); see also Jewett, 634 F.3d at 75 (noting the "'doubly' deferential standard that applies to a state prisoner's claims in a federal habeas petition that a state court has unreasonably applied the Strickland principles" (quoting Harrington, 131 S.Ct. at 788)).

### 1. Claim Three: Failure to Inform Lucien of the Prosecutor's Impeachment Decision

Lucien claims that his trial counsel did not inform him of the prosecutor's decision not to try to introduce his past conviction for armed robbery. He represents that, if he had known of that decision, he would have testified. The SJC denied this ineffective assistance of counsel claim because it agreed with the trial court's conclusion that Mr. Sinsheimer told Lucien about the prosecutor's decision. See Lucien, 440 Mass. at 672-73. Because it made this factual finding, the SJC did not decide whether Mr. Sinsheimer's alleged failure amounted to constitutionally ineffective assistance of counsel. Lucien has failed to rebut the SJC's factual finding by clear and convincing evidence. See 28 U.S.C. §2254(e)(1). Therefore, his ineffective assistance claim is not meritorious.

As explained earlier, on habeas review, a state court's factual determination is presumed correct, and the petitioner has the burden of rebutting those findings by clear and convincing evidence. See 28 U.S.C. §2254(e)(1). In the absence of "serious error," the federal habeas court must defer to the "state trial judge's implicit credibility determinations." Teti, 507 F.3d at 59. Therefore, when the state trial court is faced with two competing versions of events, each of which is "supported by record evidence," and accepts one version of events, the federal reviewing

court "cannot conclude that there has been an unreasonable determination of the facts . . . or that [the petitioner] has introduced 'clear and convincing' evidence to rebut the presumption of correctness." John v. Russo, 561 F.3d 88, 92 (1st Cir. 2009).

As also explained earlier, see §II.A.1(c), supra, during a sidebar conference near the end of trial, the prosecution informed defense counsel that he would not seek to impeach Lucien with a prior conviction for armed robbery if Lucien testified. See Nov. 27, 1995 Tr. at 74-75. Shortly thereafter, Lucien and his counsel conferred. The court then informed Lucien of his right to testify. Id. at 78. Lucien responded, "I wish not to testify." Id.

Lucien's affidavit states: "At no point during my trial did trial counsel tell me that the assistant district attorney was not going to use my prior conviction." Aff. in Support of Mot. for New Trial ¶8 (RSA Ex. 3 at 35) ("Lucien Aff."). His affidavit also states that he was advised by his trial counsel not to testify and that, during trial, he "was called to the side bar by the trial judge and advised about [his] rights on taking the stand, and unwillingly waived [his] rights." Id. ¶¶6-7. In addition, Lucien stated: "Prior to trial Counsel closing the case, I told trial Counsel that I changed my mind because he did not present any evidence to refute the Com[monwealth's] case against me; wherefor[e], I wanted to take [the] stand." Id. ¶9.

Lucien's trial attorney, Mr. Sinsheimer, submitted an affidavit to the trial court in connection with Lucien's motion for a new trial. The affidavit stated:

> On several occasions during my representation of Mr. Lucien, he expressed very strongly to me that he wished to testify at trial. I urged him very strongly and very forcefully not to testify. In retrospect, it may well be that Mr. Lucien wished to testify at trial but did not do so, but I did not think so at the time.

Sinsheimer Aff. ¶3. Mr. Sinsheimer's affidavit is silent as to whether he told Lucien about the prosecutor's decision. See id.[2]

The SJC's finding that Mr. Sinsheimer told Lucien about the prosecutor's decision is not "unreasonable . . . in light of the evidence presented in the state court proceedings." 28 U.S.C. §2254(d)(2). The trial court observed counsel and Lucien conferring immediately after the sidebar conference at which the prosecutor stated he would not seek to use Lucien's prior conviction for impeachment purposes. Nov. 27, 1995 Tr. at 76. The judge directed Mr. Sinsheimer to "chat with [his] client for a minute" and then to "bring him up to side bar". Id. Immediately after Lucien and counsel conferred, Lucien came to side bar and was asked whether he wanted to waive his right to testify. He

---

[2] It appears that Mr. Sinsheimer's affidavit was drafted by someone else because he made handwritten edits to the affidavit. Mr. Sinsheimer's edits, which are initialed by him, do not include any reference to a failure to tell Lucien that the prosecutor would not seek to introduce Lucien's prior conviction if he were to testify.

stated, "I wish not to testify." Id. at 78. The trial court concluded that Mr. Sinsheimer had told Lucien about the prosecutor's decision during the conversation that he observed them having. This conclusion, which was relied upon by the SJC, see Lucien, 440 Mass. at 672, was reasonable.

In addition, Mr. Sinsheimer's affidavit does not state that he did not tell Lucien that if he testified there was no risk his conviction would be used to impeach him. Rather, his affidavit is silent on the issue of whether he told Lucien about the prosecutor's decision. The affidavit is dated February 24, 1998, more than two years after Lucien filed his initial motion for a new trial. By this time, Lucien had stated in a sworn affidavit that Mr. Sinsheimer did not tell him of the prosecutor's decision. See Lucien Aff. ¶8. Given that Mr. Sinsheimer had admitted fault in other areas of his affidavit, the state courts were reasonable to construe this omission against Lucien.

To rebut the SJC's conclusion, Lucien relies on his own affidavit. The trial court found Lucien's affidavit was not credible. Given that Lucien's affidavit was self-serving and was not corroborated by other evidence, the trial court reasonably found that it was not believable. There is no "serious error" that merits disregarding this credibility determination. See Teti, 507 F.3d at 59.

Lucien also submitted a letter from Mr. Sinsheimer, dated November 21, 1995. See Mot. for New Trial and Evidentiary Hearing, Ex. D (RSA Ex. 7).[15]   The letter states that Mr. Sinsheimer is advising Lucien "NOT to take the witness stand" because of Judge Connelly's decision that Lucien's criminal history would be admissible to impeach him if he testified. Id. This is consistent with Lucien's contention that Mr. Sinsheimer did not want him to testify because of his prior convictions. However, it was written before the prosecutor decided not to introduce the armed robbery conviction.   Therefore, it does not support Lucien's claim that counsel failed to inform him of the prosecutor's decision during trial.

Finally, Lucien argues that even if he had been informed of the prosecutor's decision, he would still have had insufficient information to make an informed decision about whether to testify. Lucien did not have a prior conviction for armed robbery, but had prior convictions for unarmed robbery and for armed assault and battery.   The trial court noted this discrepancy in denying Lucien's first motion for a new trial. See March 4, 2002 Mem. and Order on the Def.'s Amended Mot. to Reconsider Denial of a New

---

[15] Lucien cites a second letter from Mr. Sinsheimer to Lucien dated November 15, 1995, which he claims was Exhibit B to his Motion for New Trial.   However, that letter is not part of the RSA.   From Lucien's argument, it appears that the November 15 and November 21 letter were nearly identical in substance.

Trial (RSA Ex. 3 at 182) ("Counsel for the Commonwealth indicated
to defendant's counsel, prior to the defendant resting, that he
would not seek to impeach the defendant by means of a prior armed
robbery conviction (which was incorrect as it was an armed assault
and battery)."). The SJC did not discuss this discrepancy in its
opinion, but was aware of the discrepancy because it quoted from
the trial court's opinion at length. See Lucien, 440 Mass. at
672.

The SJC evidently inferred that Mr. Sinsheimer knew to which
conviction the prosecutor was referring. This inference is
supported by the record. Mr. Sinsheimer was aware of Lucien's
prior convictions. He filed a motion in limine to keep out a prior
conviction for armed assault and battery, which the trial court
denied. Id. Furthermore, at the hearing on the motion, the
prosecutor expressed an intention to impeach Lucien using a prior
conviction for assault and battery with a deadly weapon. See Nov.
20, 1995 Tr. at 37. No other convictions were mentioned during
the discussion of this motion. See id. at 34-38. It was not
unreasonable for the SJC to infer that Mr. Sinsheimer understood
which conviction the prosecutor was referring to when he mistakenly
said "armed robbery."

Lucien has not provided clear and convincing evidence to rebut
the SJC's finding that his trial counsel informed him of the
prosecutor's impeachment decision. Therefore, this court must

defer to the SJC's factual finding as true in analyzing Lucien's claim under §2254(d). See 28 U.S.C. §2254(e)(1). Because Lucien's constitutional claim is premised on his contention that counsel did not inform him of the prosecutor's decision, it is not meritorious.

In view of the foregoing, Lucien has not shown that the SJC's denial of this ineffective assistance claim was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. §2254(d)(2), or was "contrary to, or involved an unreasonable application of, clearly established Federal law," id. §2254(d)(1).   Therefore, Claim Three is being dismissed.

### 2.   Claim Four: Failure to Call Expert Witnesses

Lucien claims that his attorney was ineffective for failing to call two expert witnesses to testify at trial. Mr. Sinsheimer had retained as experts Dr. Edward B. Sussman, a licensed pathologist, and retired State Police Officer Carl M. Majeskey, who is represented to be a ballistics expert. At trial, Mr. Sinsheimer did not call either witness to testify.

As explained earlier, at trial the Commonwealth contended that Lucien shot Mr. Edwards, who was seated in the driver's seat, from the back seat of the car. As also described earlier, Clarke testified that he saw Lucien shoot Mr. Edwards and Butler testified that Lucien later admitted he had shot Mr. Edwards.   However,

Lucien's theory was that Clarke shot Mr. Edwards while standing outside of the car. Therefore, evidence concerning the distance from which Mr. Edwards was shot was potentially important to Lucien's defense.

Lucien maintains that the testimony of Dr. Sussman and Mr. Majeskey would have tended to show that the person who shot Mr. Edwards was probably not in the back seat of the car. He contends that trial counsel did not call these witnesses because he did not want to interrupt their vacations. The decision not to call these witnesses, he asserts, was objectively unreasonable and prejudiced his defense. The SJC denied this claim on the merits.

Lucien has not shown that the SJC's denial of his claims resulted in an unreasonable application of federal law or was based on an unreasonable determination of the facts. Accordingly, this claim for ineffective assistance of counsel does not merit federal habeas relief.

### a.   Legal Standard

When a prisoner raises an ineffective assistance of counsel claim in a §2254 petition, the "ultimate inquiry . . . is whether the state court applied Strickland to the facts of petitioner's case in an objectively unreasonable manner." Yeboah-Sefah, 556 F.3d at 71; see also 28 U.S.C. §2254(d)(1); Hensley v. Roden, 755 F.3d 724, 736 (1st Cir. 2014). "Whether the state court reasonably determined that [counsel made] a strategic decision under

§2254(d)(2) is a different question from whether the strategic decision itself was a reasonable exercise of professional judgment under Strickland or whether the application of Strickland was reasonable under §2254(d)(1)." Wood v. Allen, 558 U.S. 290, 304 (2010). Furthermore, the court must presume that the state court's factual determinations are correct unless Lucien provides clear and convincing evidence to rebut that presumption. See 28 U.S.C. §2254(e)(1).

In assessing claims for ineffective assistance of counsel, courts must be highly deferential to counsel's trial strategies. See Phoenix, 233 F.3d at 81. In contrast, counsel's choices that result from inattentiveness rather than reasoned strategic decisionmaking are not entitled to a presumption of reasonableness. See Rompilla v. Beard, 545 U.S. 374, 395-96 (2005).

"The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony." Lema, 987 F.2d at 54. When a potential witness's testimony presents a "mixed bag" that might have a "possible negative impact" on the defendant's case, the decision not to call that witness is unlikely to be "patently unreasonable." Hensley, 755 F.3d at 737. However, counsel's decision not to call a witness can be constitutionally deficient where "counsel committed an obvious error, without any semblance

72

of a colorable excuse . . . [and] [t]here is simply no record support for the state court's finding that the attorney's conduct constituted a reasonable strategic choice." Ouber, 293 F.3d at 32.

Similarly, if the SJC has found that the prejudice requirement of the Strickland test has not been satisfied, this court must defer to that decision unless the SJC made an unreasonable determination of fact or unreasonably applied Strickland to the facts.   See 28 U.S.C. §2254(d)(1),(2); see also Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007).   However, if the SJC did not make any decision concerning the prejudice prong of the Strickland test, this court may do so de novo.   Fortini, 257 F.3d at 47; Dugas v. Coplan, 428 F.3d 317, 326-27 (1st Cir. 2005).

### b.   Decision Not to Call Mr. Majeskey

Lucien attacks both the factual basis for and the legal reasoning of the SJC's conclusion that the decision not to call Mr. Majeskey was a reasonable tactical decision.   First, he argues that the SJC was unreasonable in finding that trial counsel's decision not to call Mr. Majeskey was based on trial tactics. "Whether the state court reasonably determined that [counsel made] a strategic decision [must be analyzed by the habeas court] under §2254(d)(2)."   Wood, 558 U.S. at 304.

Mr. Majeskey's affidavit states that he would have testified at trial regarding where the shooter likely would have been located

73

when he shot Mr. Edwards, and the firepower and range of the weapon used to shoot him.  See Majeskey Aff. ¶3.  He explained that, for a shot from the back seat to be lethal, it would have had to be from a very close distance and would have left powder residue. Id.  He further explained that a .25-caliber automatic pistol would have left powder residue up to two feet from the muzzle.  Id.  He concluded that "the fatal shot in this instance was either [] fired by someone reaching across the front passenger seat or up to a foot or two from the car with the passenger door open, or, [] up to a foot or two from the opened window of the closed passenger door."  Id.  Lucien was seated in the rear seat of the car at the time the victim was shot.

Mr. Sinsheimer's affidavit stated that "[p]art of the reason for not asking these witnesses to testify was not wanting to anger them."  Sinsheimer Aff. ¶4 (emphasis added).  It does not describe any other reasons for not calling Mr. Majeskey.

The SJC determined that the "record indicates that there were tactical reasons, not manifestly unreasonable, why counsel might not have called the ballistician . . . ."  Lucien, 440 Mass. at 671.  The primary support for this determination was the SJC's finding that Mr. Majeskey's affidavit acknowledged that a passenger in the back seat could have shot Mr. Edwards.  Id.  This concession would have "actually bolstered the Commonwealth's case."  Id.  Therefore, "calling the ballistician might have been

risky." Id. In light of this risk, the SJC concluded that Mr. Sinsheimer's decision not to call Mr. Majeskey to testify did not constitute ineffective assistance of counsel. Id.

The state courts' factual determinations regarding trial counsel's rationales for not calling Mr. Majeskey, as well as the SJC's conclusion about the value of his testimony, "shall be presumed to be correct." 28 U.S.C. §2254(e)(1). Lucien has the burden of showing, based on clear and convincing evidence in the state record, that these findings were unreasonable. See Sanna, 265 F.3d at 10; Brown, 666 F.3d at 822 n.3.

Lucien has not provided clear and convincing evidence from the state court record to rebut the SJC's finding that counsel made a tactical decision not to call Mr. Majeskey to testify. As the SJC observed, the testimony could have strengthened the prosecution's case. The Commonwealth's theory was that Lucien fired the fatal shot from the back seat of the car. See Nov. 28, 1995 Tr. at 108 (prosecutor's closing argument). Mr. Majeskey conceded that the shooter could have reached across the front seat from the back seat to shoot Mr. Edwards. See Majeskey Aff. ¶3. While Mr. Majeskey considered this to be a risky and difficult maneuver, he opined that it was possible. Id. He also stated that such a shot would have been very close-range and would have left powder residue. Id. Because there was no powder on Mr. Edwards's skin, this conclusion could have strengthened Lucien's

defense by tending to show that the shooter was not in the back seat of the car. However, Mr. Majeskey did not explain whether a close-range shot would leave powder residue on the victim's body if the shot went through Mr. Edwards's clothing. Id. Mr. Edwards's clothes were lost by the hospital and never tested for powder residue. Based on the evidence in the state court record, the SJC was not unreasonable in concluding that Mr. Majeskey's concession that the shooter could have been in the back seat presented a risk that his testimony would bolster the prosecution's case.

Mr. Sinsheimer's affidavit does not contradict the SJC's conclusion. The affidavit explained only "[p]art" of counsel's reason for not calling Mr. Majeskey to testify. Sinsheimer Aff. ¶4. Based on the risk that it found Mr. Majeskey's testimony presented, the SJC inferred that counsel also had tactical reasons not to call him to testify. See Lucien, 440 Mass. at 670. Lucien has not provided clear and convincing evidence from the state court record to show that this inference was unreasonable. See Sanna, 265 F.3d at 10; Brown, 666 F.3d at 822 n.3; Garuti, 733 F.3d at 23. Consequently, the SJC's denial of his ineffective assistance claim was not based on an unreasonable determination of the facts under §2254(d)(2).

Second, Lucien argues that the SJC unreasonably applied Strickland in finding that counsel's tactical decision not to call

Mr. Majeskey was reasonable. "Whether the state court reasonably determined that . . . the strategic decision [] was a reasonable exercise of professional judgment under Strickland" is analyzed under §2254(d)(1). Wood, 558 U.S. at 304.

Accepting the SJC's factual findings as true, the court finds that the SJC did not unreasonably apply Strickland in concluding that the decision not to call Mr. Majeskey was a reasonable tactical choice. Mr. Majeskey's testimony could have strengthened the prosecutor's case and, therefore, have had a "possible negative impact" on Lucien's defense. Hensley, 755 F.3d at 737. Mr. Majeskey's potential testimony presented a "mixed bag" of both favorable and unfavorable testimony for Lucien's defense. Id. at 736. Therefore, trial counsel's decision not to call him to testify was not "'so patently unreasonable that no competent attorney would have made it.'" Id. at 736-37 (quoting United States v. Rodriguez, 675 F.3d 48, 56 (1st Cir. 2012)). Based on its factual findings, the SJC reasonably applied Strickland in determining that Mr. Sinsheimer's decision not to have Mr. Majeskey testify was not ineffective assistance of counsel.

The SJC did not address whether Lucien was prejudiced by any unreasonable failure to call Mr. Majeskey. See Lucien, 440 Mass. at 671. Therefore, no deference is due to the SJC on this issue. Dugas, 428 F.3d at 326-27. Considering the matter de novo, this court finds that there is no reasonable probability that Lucien

would have been found not guilty if Mr. Majeskey had testified. See Strickland, 466 U.S. at 694; Porter, 558 U.S. at 38-39. As described more fully in the following discussion concerning Dr. Sussman, Clarke testified that he saw Lucien shoot Mr. Edwards and Butler testified that Lucien told Butler that he had done so. In view of the somewhat equivocal nature of Mr. Majeskey's testimony and all of the evidence tending to show that Lucien shot Mr. Edwards, the court's confidence in the guilty verdict is not undermined by the fact that Mr. Majeskey was not presented as a witness. See Strickland, 466 U.S. at 694; Peralta, 597 F.3d at 79-80.

### c. Decision Not to Call Dr. Sussman

In analyzing and rejecting the argument that trial counsel was ineffective in failing to present the testimony of Dr. Sussman, the SJC found that there was a reasonable tactical basis for that decision. See Lucien, 440 Mass. 670-71. The SJC's reasoning is also relevant to the prejudice prong of the Strickland test. See id. If Lucien does not prove both prongs of the Strickland test, his ineffectiveness claim fails. Peralta, 597 F.3d at 79.

The SJC found that counsel's decision not to call Dr. Sussman to testify was reasonable because Dr. Sussman's testimony would have been cumulative of the testimony of the Commonwealth's pathologist. Lucien has not provided clear and convincing evidence

that the SJC made any error of fact or shown that it unreasonably applied Strickland under §2254(d)(1). Wood, 558 U.S. at 304.

Moreover, even if counsel's performance was deficient, Lucien has not proven the prejudice required by Strickland even under the standard of de novo review. Under Strickland, Lucien must show that his attorney's allegedly deficient conduct raises "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Hinton v. Alabama, 134 S.Ct. 1081, 1089 (2014) (quoting Strickland, 466 U.S. at 694). A "reasonable probability" means a likelihood that is "substantial, not just conceivable." Hensley, 755 F.3d at 736 (quoting Harrington, 131 S.Ct. at 792). The court finds that the SJC did not unreasonably apply Strickland in denying Lucien's claim and de novo review would persuade this court too that Lucien has not proven prejudice.

Dr. Atkins, the Commonwealth's expert, testified at trial that the distance from which the deadly shot was fired could not be determined based on the evidence. See Nov. 24, 1995 Trial Tr. at 58. Dr. Atkins conceded that a close-range shot could have left powder residue on the skin even through clothing. Nov. 24, 1995 Tr. at 68. This concession was important because Mr. Edwards's clothes had been lost by the hospital and were never tested for the presence of gun powder residue. Dr. Atkins concluded that he could not "rule out that it[ was] a close-range

79

shot."   Id.   at   67.    "By   close   range,   [he   meant]   within approximately two feet . . . ."  Id. at 58.

Dr. Sussman's affidavit states that, "[b]ased on the pathology report, the wound of the deceased, Ryan Edwards, would be classified as a distant gunshot wound." Sussman Aff. ¶6.  He maintained that this conclusion was supported by the absence of "stippling or powder soot in the wound of the deceased, Ryan Edwards." Id. ¶5. Dr. Sussman does not define "distant" in his affidavit.  However, in his affidavit he expresses no doubt that the gunshot was "distant." In contrast, Dr. Atkins suggested that the shot could have been "close-range," meaning within two feet. Lucien seizes on this difference to argue that Dr. Sussman's testimony was not cumulative of the Commonwealth's expert testimony and was crucial to his defense.

In addition to finding that it was tactically reasonable to not call Dr. Sussman, the SJC implicitly determined that counsel's decision not to call Dr. Sussman did not prejudice Lucien.  See Lucien, 440 Mass. at 671.[16] The SJC's conclusion was based on its

---

[16] In finding that the failure to call Dr. Sussman did not justify a new trial because his testimony would have been "essentially cumulative," the SJC cited only Commonwealth v. Grace, 397 Mass. 303, 305-06 (1988). Lucien, 440 Mass. at 671.  While not an ineffective assistance case, in Grace the SJC wrote that to obtain a new trial the defendant must prove there was "a substantial risk that the jury would have reached a different conclusion had the evidence been admitted at trial." Id. at 306.  This language is most relevant to the prejudice prong of the Strickland test, although the Grace standard is somewhat higher.

assessment of the value of Dr. Sussman's testimony to Lucien's defense.    It  characterized  Dr.  Sussman's  affidavit  as "indicat[ing] that the absence of residue in the wound suggested that it was a 'distant' gunshot wound, without specifying." Id. at 670.    The SJC found that Dr. Sussman "would have offered nothing to detract from the testimony of the Commonwealth's pathologist, and he would have added nothing to the defense." Id. at 670.  Based on Dr. Sussman's affidavit, it further found that his  "opinion  was  generally  consistent  with  that  of  the Commonwealth's pathologist." Id. at 671.  It concluded that "[t]he failure to produce evidence that is essentially cumulative of the Commonwealth's evidence does not justify a new trial." Id.

Based on the limited evidence in the state court record, the SJC was not unreasonable in determining that the failure to call Dr. Sussman did not prejudice Lucien.    Indeed, this court would reach the same conclusion.  There was substantial overlap between the two experts' opinions.  Dr. Atkins agreed that the shot may have been distant and that gun powder could have been left on Mr. Edwards's wound even through his clothing.  Dr. Sussman concluded, without explanation, that the shot was distant.    His affidavit does not explain what "distant" means. Nor does it state that the shots were likely to have come from outside the car.  Furthermore, he would have been subject to cross-examination about whether Mr. Edwards's clothes could have kept the gun powder from reaching his

skin.  His affidavit does not address whether he considered this factor in concluding that the shot was distant.

In any event, both Dr. Atkins and Mr. Majeskey stated that a .25-caliber handgun would not leave powder residue from more than two feet.  Given the evidence in the state court record, it is not possible to determine whether a "distant" shot, presumably meaning from more than two feet, could have come from inside the car. Considering the ambiguities in Dr. Sussman's affidavit in light of Dr. Atkins's concession that the shot could have been distant, the SJC was not unreasonable in concluding that Dr. Sussman's testimony "would have offered nothing to detract from the Commonwealth's pathologist, and [] would have added nothing to the defense." Lucien, 440 Mass. at 670.

Furthermore, the Commonwealth's expert only testified that the shots could have come from inside the car.  His opinion was that the physical evidence was insufficient to determine the shooter's location.  He admitted that gunshot residue could have been left on Mr. Edwards's skin through his clothing.  However, the jury did not find this testimony sufficient to raise a reasonable doubt as to Lucien's guilt.  The jury was persuaded beyond a reasonable doubt by the Commonwealth's other evidence that Lucien was the shooter.

There was substantial other evidence, unrelated to the expert testimony, that supported the conclusion that Lucien shot Mr.

Edwards. Clarke testified that Lucien forced him out of the car at gunpoint and that he saw Lucien shoot his brother. Clarke was the only witness who was present when the shot was fired. As noted by the prosecutor and trial judge, his testimony included several troubling inconsistencies. See Nov. 21, 1995 Tr. at 107 (The prosecutor stating: "I don't know if I ever had a witness is as bad as this gentleman is in terms of his memory and his abilities."); Id. at 180 (The trial judge stating: "I have severe doubts really what this guy's IQ is. . . . I tell you, hearing what all of us have heard in this courtroom, I think both counsel and myself are astounded at this gentleman."). However, a jury is entitled to believe all or parts of a witness's testimony in spite of the witness's inconsistencies. See United States v. Rothrock, 806 F.2d 318, 321 (1st Cir. 1986); United States v. DeLeon Ruiz, 47 F.3d 452, 454 (1st Cir. 1995) (stating that "the jury is free to believe some portions of a witness' testimony and not others").

Moreover, there was other evidence to prove, beyond a reasonable doubt, that Lucien shot Mr. Edwards. Most significantly, Butler testified that Lucien admitted to him that he shot Mr. Edwards. Even though Butler and Clarke were impeachable witnesses, they essentially corroborated each other, and the other evidence, tending to prove that Lucian shot Mr. Edwards. In these circumstances, it was not unreasonable for the

SJC to conclude that Lucien was not prejudiced by his attorney's decision not to call Dr. Sussman.

The jury found the testimony of Clarke and/or Butler reliable enough to find that Lucien was guilty beyond a reasonable doubt. This was in spite of Dr. Atkins's opinions that the shooter could have been outside the car and that a close-range shot could have left residue through Mr. Edwards's clothing.   Dr. Sussman's testimony could, if believed, have provided evidence that the shot was from more than two feet away.   However, the SJC could have reasonably determined that such testimony would not necessarily have discredited Clarke's or Butler's testimony.   Viewing Dr. Sussman's affidavit in the context of all of the evidence presented at trial, the SJC could have reasonably concluded that there is no "reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Hinton, 134 S.Ct. at 1089 (quoting Strickland, 466 U.S. at 694).   Indeed, this court agrees with that conclusion.

In view of the foregoing, Lucien has not shown that the SJC's denial of this ineffective assistance claim was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. §2254(d)(2), or was "contrary to, or involved an unreasonable application of, clearly established Federal law," id. §2254(d)(1).   Therefore, the court is dismissing Claim Four.

## C. Evidentiary Hearing and Discovery

Lucien requested an evidentiary hearing and discovery to support his ineffective assistance of counsel claims. The First Circuit has held that a federal habeas court may not hold an evidentiary hearing in a review under §2254(d), which applies to all claims decided by the state courts on the merits. See Garuti, 733 F.3d at 23 ("[T]he evidentiary hearing bar applies to review under both sections of §2254(d)."). This bar applies to federal discovery as well. See id.; Cullen, 131 S.Ct. at 1398 ("[R]eview under §2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."); Brown, 666 F.3d at 822 n.3 ("Review under the 'fact' prong [i.e., §2254(d)(2)] is limited to the record that was before [the] state court."). Therefore, Lucien's requests for an evidentiary hearing and discovery are being denied.

## D. Stay and Abeyance

Lucien argues that, if the court finds that any of his claims are not exhausted, the court should stay the entire petition to allow him to exhaust those claims. The court has not found that any of Lucien's claims are unexhausted. Accordingly, Lucien's request for a stay and abeyance is moot.

## V. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the court must "issue or deny a certificate of

appealability [("COA")] when it enters a final order adverse to the applicant." To receive a COA, Lucien must make "a substantial showing of a denial of a constitutional right." See 28 U.S.C. §2253(c)(3). In other words, a petitioner must "show[] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003).

A. Claim One: Butler Plea

Lucien's challenges regarding the Butler plea agreement raise complicated issues concerning procedural default. A COA on this claim is justified based on appellate counsel's failure to raise a claim for ineffective assistance of trial counsel.

In Lucien's case, counsel had little reason to raise a claim of ineffective assistance of trial counsel on direct appeal. As the Commonwealth correctly argued in opposition to Lucien's second motion for a new trial:

> The defendant's attempt to recast [the issues regarding the Butler plea] in terms of ineffective assistance of counsel cannot succeed, as the standard of review under

§33E is more favorable to him than the ineffectiveness standard. Com. v. Gaboriault, 439 Mass. 84, 90 (2003). Accordingly, an attorney cannot be deemed ineffective for failing to object to an error that did not require reversal under §33E. Com. v. Maynard, 436 Mass. 558, 572-73 (2002).

Com's Mem. in Opp. to the Def.'s Second Motion for a New Trial at 12 (RSA Ex. 8); see also Com.'s Mem. in Opp. to the Def.'s Pet. For Leave to Appeal (same argument) (RSA Ex. 12 at 11).

Therefore, under Massachusetts law, an attorney on direct appeal of a first degree murder conviction has no incentive to raise a claim for ineffective assistance of trial counsel for failing to object, except to preserve that claim for federal habeas review. Because the SJC reviews any underlying error under a standard more favorable than Strickland, the usual federalism interests that justify requiring ineffective assistance of counsel claims to be presented to state courts in the first instance are not present in this case. See Murray, 477 U.S. at 489 ("The principle of comity that underlies the exhaustion doctrine would be ill served by a rule that allowed a federal district court 'to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation[.]'" (quoting Darr v. Burford, 339 U.S. 200, 204 (1950))).

First Circuit precedent makes clear that the SJC's review of the record under §33E to determine whether a substantial miscarriage of justice occurred does not preclude a finding of

procedural default for failure of trial counsel to object.  See Horton, 370 F.3d at 81.  However, in view of the way that §33E review applies to ineffective assistance of counsel claims relating to failures to object, it is understandable that appellate counsel may not raise such claims.  As the Supreme Court has explained, "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal."  Smith, 528 U.S. at 288.  Under §33E review, if the underlying claim of error is not meritorious, the ineffective assistance claim is not meritorious.  See Maynard, 436 Mass. at 572-73.  Finding procedural default for failure to raise such a claim requires appellate attorneys to expend resources raising claims that are, in effect, not immediately relevant.  If appellate counsel fails to raise such a claim, the petitioner is required to make the more demanding showing of ineffective assistance of appellate counsel before the habeas court can review the ineffective assistance of trial counsel claim.  For these reasons, it is debatable whether Lucien's ineffective assistance of trial counsel claim should be considered procedurally defaulted.

In addition, Lucien was denied meaningful review of the trial court's conduct concerning the Butler plea because of the SJC's incorrect findings concerning the facts surrounding the plea. Under Massachusetts law, §33E provides important procedural

protections for defendants convicted of "capital" crimes. As the SJC explained in Ciampa, its:

> function under G.L. c. 278, §33E (1998 ed.), in reviewing a conviction of murder in the first degree is to consider, not only issues clearly preserved for appellate review, but also issues apparent on the record, to determine whether there is a substantial likelihood of miscarriage of justice. For example, in Commonwealth v. Callahan, 380 Mass. 821, 822 (1980), this court rejected all the arguments advanced on appeal by a defendant convicted of murder in the first degree, and then, based on its independent review of the record, identified an error, not argued below, that required the court to order a new trial.

Ciampa, 406 Mass. at 268. The court recognizes that the SJC's decision to review a procedurally defaulted claim under §33E does not waive procedural default for federal habeas cases. Nevertheless, by the SJC's own standard, Lucien was denied an important procedural safeguard because of the SJC's unreasonable interpretation of the state record. In the unusual circumstances of this case, because of appellate counsel's failure to raise a claim for ineffective assistance of trial counsel--a claim that he had no incentive to raise under state law--this court has found Lucien's underlying claims relating to the Butler plea are insulated from judicial review.

In view of the foregoing, the court is persuaded that "the issues presented [a]re 'adequate to deserve encouragement to proceed further.'" Slack, 529 U.S. at 484 (quoting Barefoot, 463

U.S. at 893). Accordingly, the court finds it appropriate to grant Lucien a COA to appeal its decision on Claim One.

B.   Claims Three and Four: Ineffective Assistance of Counsel

A COA is also justified concerning Lucien's ineffective assistance of counsel claims. On appeal, the state courts denied Lucien's claims without holding an evidentiary hearing. The state courts denied the ineffective assistance of counsel claims now asserted as Claims Three and Four by drawing many factual inferences against him. It is debatable whether the type of fact-finding engaged in by the state courts should be deferred to under 28 U.S.C. §2254(d)(2) and (e)(1).

Until recently, federal habeas review of state court decisions may have been less deferential under §2254(d) when the state court did not hold an evidentiary hearing. See Teti, 507 F.3d at 57 ("§2254(d) applies regardless of the procedures employed or the decision reached by the state court, as long as a substantive decision was reached; the adequacy of the procedures and of the decision are addressed through the lens of §2254(d), not as a threshold matter."). The First Circuit had held that federal habeas courts could use evidentiary hearings to test the reasonableness of state court factual findings when the state court had not conducted an evidentiary hearing. See id. at 59 ("While it might seem questionable to presume the correctness of material facts not derived from a full and fair hearing in state court, the

90

veracity of those facts can be tested through an evidentiary hearing before the district court where appropriate.").

Subsequent decisions have established that federal courts are not authorized to hold evidentiary hearings or allow discovery for claims decided on the merits in state court, at least until the petitioner has satisfied his burden under §2254(d)(2). See Garuti, 733 F.3d at 23. This court's review of Lucien's claims was, therefore, limited to the state court record.

Consequently, Lucien was required to show, by "clear and convincing evidence," 28 U.S.C. §2254(e)(1), that the SJC's factual findings were "based on an unreasonable determination of the facts," id. §2254(d)(2). See Sanna, 265 F.3d at 10. He was required to rely on only the evidence already presented to the state courts. Id.; Garuti, 733 F.3d at 23. This high hurdle for relief may be appropriate where the state court has allowed the petitioner a full and fair opportunity to develop an evidentiary record to support his claim.

However, in this case, Lucien's claims were denied without an evidentiary hearing. In denying his ineffective assistance claims, the SJC and trial courts drew inferences about what silences and omissions in the affidavits that Lucien provided meant, repeatedly drawing inferences against him. He was proceeding pro se at the time that he first raised these claims. It would understandably be difficult for a pro se prisoner to

develop a sufficient factual record.  Because Lucien was not given
an evidentiary hearing, he did not have an opportunity to present
testimony from the affiants that may have explained ambiguities or
omissions in their affidavits.

The court has applied the strong presumption of correctness
to the state court's factual findings required by §2254(e)(1) in
denying Lucien's ineffective assistance claims.[17]  However, it may
be appropriate to use a lower threshold for a habeas petitioner
seeking an evidentiary hearing when there was no evidentiary
hearing in state court.  See Teti, 507 F.3d at 57.

The court finds that "the issues presented [in claims three
and four] [a]re 'adequate to deserve encouragement to proceed
further.'"  Slack, 529 U.S. at 484 (quoting Barefoot, 463 U.S. at
893).    Therefore,  the  court  is  granting  a  COA  on  Lucien's
ineffective assistance claims, Claims Three and Four.

        C.   Remaining Claims

Lucien's other claims do not present issues that are "adequate
to deserve encouragement to proceed further."  Slack, 529 U.S. at

---

[17] The  court  has  previously  found  that  the  SJC  unreasonably--
indeed, incorrectly--found that Butler had not pled guilty.  See
March 22, 2013 Mem. and Order at 7-9.

The court also notes that, while the First Circuit has held that
the potentially more stringent "clear and convincing evidence"
requirement  of  §2254(e)(1)  applies  to  all  claims  under
§2254(d)(2), see Sanna, 265 F.3d at 10,  the Supreme Court has
declined to resolve that question, see Wood, 558 U.S. at 300-01.

484 (quoting Barefoot, 463 U.S. at 893).   Therefore, the court is
denying a certificate of appealability as to all other claims.
Lucien may seek a COA on those issues from the Court of Appeals
for the First Circuit.   See §2254 Rule 11(a).

VI.   ORDER

In view of the foregoing, it is hereby OREDERED that:

1.   Lucien's Petition for A Writ of Habeas Corpus (Docket No.
1) is DENIED.

2.   Lucien's Pro-Se Motion for Leave to Request that this
Honorable Court Consider His Ineffective Assistance of Appellate
Counsel Issue as an Independent Ground for Habeas Corpus Relief
(Docket No. 157) is DENIED.

3.   A Certificate of Appealability is ISSUED for Claims One,
Three, and Four.   A Certificate of Appealability is DENIED for all
other claims.

4.   Lucien's request for an evidentiary hearing (Docket No.
26) is DENIED.

5.   Lucien's Motion for Leave to Initiate Discovery (Docket
No. 47) is DENIED.

6.   Lucien's Motion to Amend the State Record (Docket No.
130) is DENIED.

7.   Lucien's Motion to Expand the State Record (Docket No.
146) is DENIED.

UNITED STATES DISTRICT JUDGE